SAND SPRINGS HOME, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 4871.   Promulgated February 18, 1927.

> The petitioner was during the year 1922 a corporation organized
> and operated exclusively for charitable purposes, no part of the
> net earnings of which inured to the benefit of any private stock-
> holder or individual; and it was therefore exempt from taxation
> under the provisions of section 231 (6) of the Revenue Act of
> 1921.

*J. S. Y. Ivins, Esq., Kingman Brewster, Esq.,* and *C. B. Stuart,
Esq.,* for the petitioner.
*John D. Foley, Esq.,* for the respondent.

The petitioner appeals from the determination of a deficiency
in income tax for the year 1922 in the amount of $232,868.60.   The
question involved is whether or not the petitioner is exempt from
the Federal income tax for the year 1922 under the provisions of
section 231 (6) of the Revenue Act of 1921.

### FINDINGS OF FACT.

The petitioner is a corporation organized under the laws of the
State of Oklahoma.

In the year 1908 one Charles Page began, at his own expense, to
take care of certain aged persons and orphans.   He devoted to that
purpose a tract of land which he owned at Sand Springs, Okla.,
and erected buildings thereon.   He subsequently increased the num-
ber of buildings on the tract of land and the number of persons to
whom he was extending aid, until in January, 1912, he was
supporting about sixty persons.

On August 9, 1912, Page, in order to continue and perpetuate his
charitable enterprises, caused the petitioner to be incorporated, and
immediately transferred to it the property that he was at that time
using for the benefit of the persons depending on his charity.   The
articles of incorporation were executed by Charles Page, Edwin A.
Page, Claude F. Tingley, B. F. Breeding and C. E. Buchner.   They
are as follows:

### ARTICLES OF INCORPORATION.

BE IT KNOWN, that the undersigned, all of whom are citizens of the State
of Oklahoma, do hereby voluntarily associate themselves together for the pur-
pose of forming a benevolent (eleemosynary) corporation under the laws of
the State of Oklahoma, and do hereby certify:

### FIRST.

That the name of this corporation shall be the Sand Springs Home.

### SECOND.

That the place where its principal business is to be transacted is within Tulsa County, State of Oklahoma.

### THIRD.

That the corporation shall exist until dissolved by law.

### FOURTH.

And we, the undersigned, do hereby certify that on the 20th day of July, 1912, at the City of Tulsa, in the County of Tulsa, and State of Oklahoma, pursuant to due call, an election was had for trustees of the above named company, and that at said election so held,

| Name. | Postoffice. |
|---|---|
| Charles Page | Tulsa, Oklahoma, |
| Edwin A. Page | Tulsa, Oklahoma, |
| Claude F. Tingley | Tulsa, Oklahoma, |
| B. F. Breeding | Tulsa, Oklahoma, |
| C. E. Buchner | Tulsa, Oklahoma, |

were elected trustees to hold their office so long as they may live and reside within the State of Oklahoma.

And we, Charles Page, and Claude F. Tingley, do certify that we were respectively Chairman and Secretary of said meeting, and conducted said election, and that the facts above stated are true.

CHAS. PAGE,

*Chairman.*

CLAUDE F. TINGLEY,

*Secretary.*

### FIFTH.

That the number of trustees of this corporation shall be five (5) in number, and the names and residences of such of them who are to serve so long as they shall live and reside within the State of Oklahoma are as follows:

| Name. | Postoffice. |
|---|---|
| Charles Page | Tulsa, Oklahoma. |
| Edwin A. Page | Tulsa, Oklahoma. |
| Claude F. Tingley | Tulsa, Oklahoma. |
| C. E. Buchner | Tulsa, Oklahoma. |
| B. F. Breeding | Tulsa, Oklahoma. |

That in the event of the death, disability or removal of any of said trustees, it shall be the duty of the remaining trustees to forthwith elect a suitable and proper male resident of the State of Oklahoma to fill said vacancy and it shall be the duty of said trustees to forever so fill vacancies occurring. If, for any reason said trustees shall fail for a reasonable time to, or it shall become impossible for said trustees to fill vacancies as aforesaid, the vacancy or vacancies shall be filled by the Judges of the Supreme Court of the State of Oklahoma on the first day of the first term of said Court after the fact of said

vacancy shall have been made known to the Judges of said Court, or as soon thereafter as said Judges may conveniently make said appointment.

Whereas, Charles Page, of Tulsa, Oklahoma, has for a long time, been impressed with the importance of educating the poor, and of placing them, by the early cultivation of their minds and the development of their moral principles, above the many temptations to which, through poverty and temptation, they are exposed; and is particularly desirous of providing for such a number of poor white children as can be trained in one institution a better education, as well as more comfortable maintenance than they usually receive from the application of the public·funds; and is also particularly desirous of providing poor, white, aged and infirm persons, who are without means of support, more comfortable maintenance and care than they usually receive from the public funds; and,

WHEREAS, It is the desire of the said Charles Page to form an eleemosynary or charitable corporation which may exist forever and hold such real property as may be suitable for its needs in perpetuity, and whose purpose shall be the carrying out of the foregoing objects. And it is also his desire and intent to endow and give to this corporation certain lands and tenements in Tulsa County, State of Oklahoma, forever to be held by said corporation in perpetuity, and to establish on said premises such institutions as are best suited for the purposes herein stated and to give to said company such funds as he shall deem necessary and proper to enable it to obtain from its lands and tenements an income sufficient for its maintenance and proper existence forever. Such gifts being made with the hope and desire that the company, so managed and controlled by the said trustees and their successors, shall be self supporting. That sufficient money shall be earned by said corporation to maintain and operate an institution to care, maintain, support and educate poor, white children under the age of 18 years, and care, maintain and support, poor, old, or infirm white persons who are destitute. To provide a fund to improve and enlarge said institution, and to carry out to the highest fulfillment the objects and purposes herein set forth.

And the said Charles Page, having confidence in the ability and integrity of Edwin A. Page, Claude F. Tingley, B. F. Breeding and C. E. Buchner, has, with their consent and desire, associated said persons with him as members thereof.

WHEREAS, the said Charles Page in thought and deed is the founder of the Home contemplated herein, and has at this time established the Sand Springs Home on the banks of the Arkansas River in Tulsa County, State of Oklahoma, and is at this time there maintaining such Home with over fifty (50) children whose condition was such as is herein contemplated; and,

WHEREAS, the buildings, lands and funds for existence and maintenance until such time as the same shall become self supporting have been and will be furnished by the said Charles Page; and,

WHEREAS, it is the belief of the trustees here named that the best result of the purposes contemplated will be had under the direction and control of the said Charles Page:

Now, that the best results may be obtained, the incorporation here prayed for is accepted, and the trustees here accept their offices with the agreement and understanding that during the life of the said Charles Page, unless otherwise designated by him in writing, all matters of legislation and administration, of whatsoever kind or character, in the matters here contemplated, shall be absolutely in the control and under the direction of the said Charles Page, and the trustees hereby authorize and ratify any and all acts of the said Charles Page effected during his life time, in the management, sale, control and

disposition of the property and affairs of the company of whatsoever kind and character.

In view of the foregoing, and desiring to be in accord with the objects and purposes therein declared, we, the undersigned, do declare that the purposes for which this corporation is formed are:

To establish and maintain a Home and school for the benefit of poor white children and poor old and infirm white persons, and incident thereto.

FIRST: To hold in trust such lands as it may acquire by purchase, gift, or devise, (except that it shall take only such lands as are reasonably necessary to carry out the purposes contemplated), forever in perpetuity and without power of sale or encumbrance, for the benefit of poor white children under the age of eighteen years, in need of maintenance, support and education, and poor, old and infirm white persons who are without means of support; except and reserving this that during the life time of the said Charles Page, and not thereafter, said corporation may sell and convey such lands acquired by it as shall, in the judgment of the said Page seem most conducive to the best interests of the company. And of said beneficiaries, those for whose admission application shall first be made shall be first introduced, all other things concurring. And at all future times, priority of application shall entitle the applicant to admission to the benefits contemplated; and if there shall be, at any time, more applicants than vacancies, and the children or aged persons applying shall have been born in different places, a preference shall be given:

(a) All other things concurring, to children born in Tulsa County, State of Oklahoma, or aged persons who are residents of Tulsa County.

(b) All other things concurring, to children born in the State of Oklahoma, or aged persons who are residents of Oklahoma.

And incident and auxiliary to said trust and in order that sufficient funds may be obtained to carry out the charities herein set forth, and to so improve the lands which may be held by this corporation, and that such buildings and improvements of all kinds may be made and all things necessary, incident or convenient to carrying out the desires heretofore expressed, and particularly that said corporation and its holdings may be so managed that it shall, forever, be self supporting, the moneys, increase and profit so obtained to be used only in such manner as shall be most conducive to the proper carrying out of the charitable and benevolent purposes herein stated, therefore, we say that the further purposes of this corporation are:

Second: Upon the said lands so acquired by it, and not elsewhere, to engage in and carry on the business of drilling and exploring for oil and gas, producing, refining, distilling, treating, manufacturing, piping, carrying, handling, storing, dealing in, buying and selling oils, petroleum, natural gas, and for such purposes to buy and otherwise acquire, hold, own, operate and manage refineries, tanks, manufactories, machinery, tank-cars, and other works, property and appliances that may be incident or auxiliary to said business, or that may be deemed necessary or convenient; to hold, use or operate mining rights, deposits of mineral, rock, earth or water; and incident thereto to execute any and all instruments necessary and convenient to the buying, selling, trading or dealing in personal property.

To purchase, construct, maintain, sell or deal in buildings, structures, houses and tenements of whatsoever kind and nature, and to do any and all things incident to the purchasing, constructing, maintaining and selling of buildings, houses and tenements.

To purchase or otherwise acquire, and to furnish and distribute gas, electric current or other mechanical power or heat, light, power, refrigeration, signaling, traction or other purpose; to construct and operate power houses, termi-

nals, pneumatic tubes, telephone systems, telegraph lines, gas and electric plants and other structures incidental to any of the purposes herein enumerated; to contract and operate by electricity or other power railways for the transportation of passengers or freight, over its own lands as aforesaid; to furnish, transmit, convey, transport, and deliver sounds, signals, and intelligence, packages, mail matter, freight, and general merchandise, by steam, water, air, electricity, gas or otherwise, and to acquire, construct, dispose of, hold, maintain, operate and lease to or rent from others all terminals structures and appliances useful in carrying out said purposes; to produce, manufacture and to otherwise prepare, deal in and deal with any materials, machinery, appliances, supplies or projects aforesaid; to acquire, hold, manage and operate canals, reservoirs, dams, ditches, flumes, aqueducts, pipes, water and electric lines, machinery, factories, and other property for the general purposes herein stated; to acquire, hold, manage and operate buildings, tanks, machinery, pipes and pipe lines,. and any and all other appliances for manufacturing, producing and distributing gas; and to own, hold and operate factories for the manufacture of any and all useful articles and to sell, trade or deal in the products thereof.

To acquire by purchase, or otherwise, for any person, firm or corporation, town, incorporated cities, cities or counties, property, rights, privileges and franchises that may be deemed of value to this corporation in carrying out or in connection with any or all of the objects for which this corporation is formed, as set forth herein; to mine or otherwise to extract or remove coal, ores, stone, oil and gas, and any other materials and timber from any lands held by the company.

To construct bridges, buildings, machinery, engines, cars and other equipment, elevators, water works, gas works and electric works, viaducts and any other means of transportation, and to sell the same, or otherwise dispose of, or to maintain and operate the same.

To buy, feed, sell, slaughter, pack, preserve, prepare for market, transport, import, export, deal in and with cattle, hogs, sheep and any and all domestic or wild animals suitable for food, and with any article or product, or article in the manufacture or composition of which the aforesaid products of any kind or nature are an adjunct or factor; intending to buy, sell or provide for market all supplies, materials or articles necessary, convenient or incidental to a general packing plant; also to make, manufacture, buy, sell deal in ice, and in connection therewith to construct, lease, own and operate a plant for the manufacture of ice, and to do each and everything necessary, suitable or proper for the accomplishing of the manufacturing, preparing for market, transporting, exporting, dealing in and with any article in the manufacture or composition of which ice is an adjunct or factor, and to acquire, hold, manage and operate buildings, tanks, cars, machinery, pipes, and any and all appliances for the manufacturing, producing and, distributing of ice, also to buy, sell, store, prepare for market, transport, import, deal in poultry, eggs, meats, vegetables, fruits and all products needing storage; hereby intending to store, buy, sell and prepare for market all and every kind of food and liquid products; also to purchase, lease, exchange, hire, or otherwise acquire any and all privileges, pursuits, franchises, suitable or convenient for the purchase, manufacturing, selling or distributing of cold, heat, and to acquire, hold, manage or operate plants, machinery and pipes and pipe lines and all the appliances for manufacturing, producing and distributing cold and heat; also to manufacture, buy, sell and deal in and with cotton seed as well as the products of which it is a constituent; also to manufacture, prepare for market,

transport, import, export, deal in and with any article or product in the manufacture or composition of which cotton seed of any kind or character is an adjunct or factor; and to acquire by purchase, manufacture or otherwise, all supplies and materials and articles necessary or convenient to use in connection with and at the times necessary, concerning or incident to a storage or cold storage business.

To engage in any other manufacturing, mining, construction or transportation business of any kind or character whatsoever, and to do and to acquire, hold, own, and dispose of any and all property, assets, stocks, bonds and rights of any kind and every kind whatsoever; to acquire by purchase, subscription or otherwise, and to hold or dispose of bonds or any other obligations of any other corporation.

To own, hold and control the stock of the Sand Springs Railway Company and to operate said road as it now exists or may hereafter exist, as contemplated by its Charter and the laws of the State of Oklahoma, including in this right the right to own the franchise heretofore granted by the City of Tulsa to the said Sand Springs Railway Company; to own stock in such other corporations as may hereafter be transferred to it and should it be expedient to operate the holdings of said corporation all of these powers to be in accordance with the laws of the State of Oklahoma and the Rules and regulations of the corporation Commission.

To employ managers, superintendents, teachers, laborers, skilled and unskilled, physicians and attorney or attorneys at law, and to do any and all things lawful and necessary, incident or convenient to carry out any of the foregoing purposes.

That the objects for which this corporation is formed may be for the charitable and benevolent purposes herein set forth, and none other, this incorporation is accepted and the trustees, for themselves and their successors, here accept their offices with the understanding and agreement that they shall receive no pay or emolument or benefit, direct or indirect, by reason of their trusteeship, except during the life of the said Charles Page each trustee shall receive the sum of $5.00 per year, payable quarterly, and after the death of the said Charles Page said trustees, and their successors, shall receive the sum of $3.00 per day for each and every day necessarily employed in the conduct of the affairs of the company.

PROVIDED, That should in the years to come the sums here provided as compensation for the trustees become inadequate, applications may be made to the Judges of the Supreme Court of the State of Oklahoma, and said Judges shall make, upon such showing as they deem sufficient, a suitable allowance to said trustees for their services rendered and to be rendered.

IN WITNESS WHEREOF, We have hereunto subscribed our names this 31st day of July, 1912.

This certificate is issued subject to the following constitutional requirement; That the corporation to which it is issued will submit any difference it may have with employees, with reference to labor, to arbitration, as shall be provided by law.

On August 3, 1918, amended articles of incorporation for the petitioner were executed by Charles Page, Edwin A. Page, C. F. Tingley and B. F. Breeding, and were filed in the office of the Secretary of State of Oklahoma.

AMENDED ARTICLES OF INCORPORATION.

BE IT KNOWN that the undersigned, all of whom are citizens of the State of Oklahoma, do hereby voluntarily associate themselves together for the purpose of forming a benevolent (eleemosynary) corporation under the laws of the State of Oklahoma, and do hereby certify:—

FIRST.

That the name of this corporation shall be

SAND SPRINGS HOME.

SECOND.

That the place where its principal business is to be transacted is within Tulsa County, State of Oklahoma.

THIRD.

That the corporation shall exist until dissolved by law.

FOURTH.

And we, the undersigned, do hereby certify that on the 1st day of August, A. D., 1918, at the City of Sand Springs, in the County of Tulsa and State of Oklahoma, pursuant to due call, an election was had for trustees of the above-named company and that at such election so held

| (Name) | (Post Office) |
|---|---|
| Charles Page | Sand Springs, Oklahoma, |
| Edwin A. Page | "        "        " |
| C. F. Tingley | Tulsa, Oklahoma, |
| C. E. Buchner | "        " |
| B. F. Breeding | Sand Springs, Oklahoma, |

were elected trustees to hold their offices for one year from the date of such meeting and until their successors are selected in accordance with the by-laws of said corporation.

And we, Charles Page, and C. F. Tingley do hereby certify that we were respectively Chairman and Secretary of said meeting and conducted said election, and that the facts above stated are true.

CHARLES PAGE <i>Chairman.</i><br>C. F. TINGLEY <i>Secretary.</i>

(SEAL)

FIFTH.

That the number of trustees of this corporation shall be five (5) in number and the names and residences of such of them who are to serve for one year from the adoption hereof and until their successors are selected as provided in the bylaws of such corporation are as follows:

| (Name) | (Post office) |
|---|---|
| Charles Page | Sand Springs, Oklahoma, |
| Edwin A. Page | "        "        " |
| C. F. Tingley | Tulsa, Oklahoma, |
| C. E. Buchner | "        " |
| B. F. Breeding | Sand Springs, Oklahoma. |

That in the event of the death, disability or removal of any of said trustees, the power of appointment to fill such vacancy or vacancies is vested in Charles Page, the founder of such corporation, during his lifetime, and after his death such vacancy or vacancies shall be filled in such manner as may be provided by the by-laws of such corporation.

WHEREAS, CHARLES PAGE, the founder of this corporation, had for a long time been impressed with the importance of founding and establishing a corporation whose members should hold no stock and have no pecuniary personal interest therein, and whose purpose should be to carry out the general plan of the founder and to perpetuate the same forever as an eleemosynary institution, and charitable foundation whose object should be

(a) To maintain a home for children who may be poor or whose condition or surroundings may be such as to render it desirable that they be placed where they are removed from the temptations which, through poverty or unfavorable environment, may not be conducive to their proper development or to the best interests of society.

(b) To establish and maintain in connection therewith and auxiliary thereto certain hospitals, homes, and institutions for the alleviation of suffering; for the treatment and cure of diseases; for the care, education and treatment of the deaf, dumb or blind; and for the relief, assistance, education, and training of those who from pre-natal causes or from accident or disease have been deprived of one or more of their senses or faculties, or who are partially or wholly unable to care for themselves, or are in need of assistance in combating disease or in preparing for a useful life.

(c) To provide homes, sustenance, care or assistance for needy and deserving widows and their dependent children, and to provide means by which such widows may maintain themselves and their dependent children, in whole or in part.

(d) To provide homes, care and assistance for such aged and infirm persons as may be wholly or partially incapacitated from properly caring for themselves.

(e) To carry on as auxiliary to the general purpose of and in connection with such home or homes, foundation or foundations, institution or institutions and for the purpose of contributing thereto and as a part thereof, such educational institutions, agricultural and trade schools, manual training and domestic economy establishments, and other agricultural, industrial, and manufacturing enterprises as may be beneficial or convenient in the support or maintenance of or in the carrying out of the general purpose of the corporation.

(f) To extend and enlarge each, any and all of the objects herein mentioned as may be useful or convenient and as may make the general creation of such foundation and the purpose of this corporation more beneficial to humanity, in accordance with the general scope thereof, and as may contribute most to the happiness and moral and physical well-being of all who may come within the general purview of the foundation of such institution or institutions, and as may render the same, and all institutions connected therewith, wholly or partially self-supporting, and as may perpetuate the same forever, in order that the needy may be cared for, the suffering may be alleviated, and that the greatest possible good may be accomplished.

(g) To provide such moral and religious training as may advance the well-being of society and reverence for God and lead to a virtuous and religious life.

(h) To provide, set aside, and maintain a suitable sum or sums, fund or funds, for the assistance and aid of all employees of the said Charles Page and of said Corporation, and all persons engaged in or employed upon the

work of said Charles Page or the said corporation, or in the several industries related thereto or connected therewith, or with any of the auxiliaries or industries incident to the carrying out of the general purpose of such foundation and to provide that upon terms to be set forth in the rules and by-laws of such corporation, each and all of said employees may be provided with suitable home and proper support.

(i) To provide, in such way as may be from time to time necessary or advantageous for the carrying out of the general charitable and humanitarian purposes of the founding of such charitable institution in a broader and more effective way than is practical in similar institutions maintained by governmental agencies or supported by public funds.

WHEREAS, It is the desire of the said Charles Page to form an eleemosynary or charitable corporation which may exist forever and hold such real property as may be suitable for its needs in perpetuity, and whose purpose shall be the carrying out of the objects herein set forth. And it is also his desire and intent to endow and give to this corporation certain lands and tenements forever to be held in perpetuity, and to establish on certain lands in Tulsa County, Oklahoma, such institutions as are best suited for the purposes herein stated, and to give to the said company such funds as he shall deem necessary and proper to enable it to obtain from its lands and tenements an income sufficient for its maintenance and proper existence forever. Such gifts being made with the hope and the desire that the company so formed, managed and controlled by himself and the trustees appointed by him during his lifetime and their successors selected as provided by by-law after his death, shall be self-supporting. That sufficient money shall be earned by said corporation to maintain, operate and support such institution or institutions and such others as may be established by such corporation of a like or similar general character as herein contemplated, and to carry on, extend and perpetuate the charitable and eleemosynary character thereof; to provide a fund or funds for the purpose of making suitable provision for the improvement, enlargement and extension of such institutions; to provide suitable funds for the care, maintenance and assistance of all persons engaged in or employed about the carrying out of the general purpose of such foundation directly or in any of the enterprises auxiliary thereto, and to provide for the perpetual growth and maintenance of the charitable purposes contemplated in, and to carry out to the highest fulfillment the objects and purposes herein set forth.

And the said Charles Page, having confidence in the ability and integrity of Edwin A. Page, C. F. Tingley, C. E. Buchner and B. F. Breeding, has with their consent and desire associated said persons with him as members hereof.

WHEREAS, the said Charles Page in thought and deed is the founder of the Home and charities contemplated herein and has at this time established the SAND SPRINGS HOME on the banks of the Arkansas River in Tulsa County, State of Oklahoma; has conveyed and transferred to said Sand Springs Home certain lands, tenements, effects and funds; has there established various charities as herein contemplated and purposes to extend and enlarge the same along the lines herein contemplated, and at this time has more than fifty (50) children in said Home; and,

WHEREAS, the buildings, lands, tenements and funds for the existence and maintenance thereof until such time as the same shall become self-supporting, have been and will be furnished by the said Charles Page; and

WHEREAS, it is the belief of the trustees herein named that the best results of the purposes contemplated will be had under the direction and control of the said Charles Page;

Now, that the best results may be obtained, the incorporation here prayed for is accepted, and the trustees here accept their offices and all property heretofore conveyed, assigned or acquired and hereafter to be conveyed, assigned or acquired, with the agreement and understanding that during the life of the said Charles Page, unless otherwise designated by him in writing, all matters of legislation or administration, of whatsoever kind or character, in the matters here contemplated, shall be absolutely and irrevocably in the control and under the direction of the said Charles Page, and the said trustees hereby authorize and irrevocably ratify any and all acts of the said Charles Page effected during his lifetime, pursuant to the powers herein conferred, in the management, sale, control and disposition of the property and affairs of the company, of whatever kind and character.

In view of the foregoing, and desiring to be in accord with the objects therein declared, and for the purposes of giving effect and perpetuity to the plans and purposes of the said Charles Page, the founder of this corporation and the charities therein contemplated, we, the undersigned, do declare that the purposes for which this corporation is founded are:

To establish, endow and maintain for the benefit of poor, needy, sick, diseased, deficient or unfortunate persons a charity or foundation, a home, or homes, school or schools, hospital or hospitals, and to provide for the perpetuation thereof forever; to conduct in connection therewith such business and enterprises as will contribute to the general purposes thereof; to provide homes, care and assistance for persons employed in or engaged upon the work of carrying on the said charities and the various enterprises connected therewith, and to raise, create and maintain funds for the carrying on of all of said purposes and others cognate or incident thereto and connected therewith.

First. To hold in trust such lands as it may acquire by purchase, gift or devise (except that it shall take only such lands as are reasonably necessary to carry out the purposes contemplated) forever in perpetuity, and without sale or encumbrance, for the benefit of such charity or foundation and for the use of such persons as are herein contemplated, except and reserving this, that during the lifetime of the said Charles Page, and not thereafter, said corporation may sell and convey such lands acquired by it as shall, in the judgment of the said Charles Page, seem most conducive to the best interests of the company and the enforcement of the purposes of the corporation.

And after the death of the said Charles Page no sale or conveyance shall be made of the lands on the north side of the Arkansas River comprising the tract of land on which the Sand Springs Home is established and maintained, and situated in Township Twenty (20) North, Range Eleven (11) East, and Township Twenty (20) North, Range Twelve (12) East, and Township Nineteen (19) North, Range Eleven (11) East, and Township Nineteen (19) North, Range Twelve (12) East, in Osage and Tulsa Counties, Oklahoma.

And such other lands as may subsequently be acquired adjacent thereto or for use in connection therewith, except for the laying out of a townsite or townsites or any addition thereto, nor to lease the same for a longer period than five (5) years for any other than manufacturing or mineral purposes.

But any and all other lands owned by the said corporation may be sold and conveyed by said corporation in the discretion of the trustees only when such sale shall be deemed necessary or convenient and for the best interests of the corporation and the various charities and foundations or any of them created or maintained pursuant to the powers herein, and no such conveyances shall be binding upon the corporation if any trustee thereof is or shall be at any

time a grantee in such conveyance or shall be interested as grantee or purchaser of such lands, tenements or hereditaments or in any way whatever, whether by direct, mean or ultimate conveyance, or by way of any known or secret use, trust or interest whatever, whether created by deed or arising from the operation of law, or resulting in any manner whatever, and any estate, right, title, use or interest which the said trustees or either of them may or shall at any time have or acquire in any lands, tenements or hereditaments of which the said corporation shall be at any time the owner, or in which the said corporation shall at any time have any estate, right, title or interest, shall inure to and vest in the said corporation, and to its use, benefit and behoof. And no conveyance or transfer of land or any interest in land whatever shall at any time be made by said corporation until such transfer or conveyance shall have been authorized by a vote of not less than four trustees of this corporation at a regularly called meeting thereof, held pursuant to the provisions of the by-laws, and no such transfer or conveyance shall be valid or binding upon the corporation unless the vote by which the same is authorized shall have been entered and recorded in the records of the corporation. Except, however, that this shall not divest any trustee of any estate or interest he may have acquired prior to his selection or appointment as trustee, nor shall it prevent the acquisition in the usual course of business of a lot or lots within the limits of a townsite laid out on said lands, nor shall it invalidate any interest in lands conveyed to any trustee by said Charles Page during his lifetime or by any will, devise or testamentary instrument executed by said Charles Page. And provided further that any conveyance which shall be made of any of the lands, tenements or hereditaments of said corporation, shall reserve to said corporation all of the mineral, oil and gas rights in said lands.

No mortgage or encumbrance shall at any time be given upon the lands, tenements or hereditaments of the corporation for any sum in excess of the sum of twenty-five thousand dollars ($25,000.00), after the death of the said Charles Page, and the power of the trustees to mortgage, encumber or hypothecate the lands or property of the corporation is hereby limited to the said sum of twenty-five thousand dollars ($25,000.00).

And of said beneficiaries, those for whose admission application shall first be made shall be first introduced, all other things concurring. And at all future times priority of application shall entitle the applicant to admission to the benefits contemplated; and if there shall be, at any time, more applicants than vacancies, and the persons applying shall have been born in different places, a preference shall be given:

(a) All other things concurring, to children born in Tulsa County, State of Oklahoma, or persons who are residents of Tulsa County.

(b) All other things concurring, to children born in the State of Oklahoma, or persons who are residents of Oklahoma.

And incident and auxiliary to said trust, and in order that sufficient funds may be obtained to carry out the charities herein set forth, and to so improve the lands which may be held by this corporation, and that such buildings, and improvements of all kinds may be made and all things necessary, incident or convenient to carrying out the desires heretofore expressed, and particularly that said corporation and its holdings may be so managed that it shall forever be self-supporting, the moneys, increase and profit so obtained to be used only in such manner as shall be most conducive to the proper carrying out of the charitable and benevolent purposes herein stated, therefore, we say that the further purposes of this corporation are:

Second. Upon the said lands and tenements acquired by it, and not elsewhere, to engage and carry on the business of drilling and exploring for oil and gas, producing and refining, distilling, treating, manufacturing, piping, carrying, handling, storing, dealing in, buying and selling oils, petroleum, natural gas, and for such purposes to buy and otherwise acquire, hold, own, operate and manage refineries, tanks, manufactories, machinery, tank cars and other works, property and appliances that may be deemed necessary or convenient; to hold, use or operate mining rights, deposits of mineral, rock, earth or water; and incident thereto to execute any and all instruments necessary and convenient to the buying, selling, trading or dealing in personal property.

To purchase, construct, maintain, sell or deal in buildings, structures, houses and tenements of whatsoever kind and nature, and to do any and all things incident to the purchasing, constructing, maintaining and selling of buildings, houses and tenements.

To purchase or otherwise acquire, and to furnish and distribute gas, electric current or other mechanical power, or heat, light, power, refrigeration, signaling, traction, or other purpose, to construct and operate power houses, terminals, pneumatic tubes, telephone systems, telegraph lines, gas and electric plants and other structures incidental to any of the purposes herein enumerated; to contract for, construct and operate by electricity or other power, railways for the transportation of passengers or freight; to furnish, transmit, convey, transport and deliver sounds, signals, and intelligence, packages, mail matter, freight, and general merchandise, by steam, water, air, electricity, gas or otherwise, and to acquire, construct, dispose of, hold maintain, operate, and lease to or rent free from others all terminals, structures and appliances useful in carrying out said purposes; to produce, manufacture and otherwise prepare, deal in and deal with any materials, machinery, appliances, supplies or projects aforesaid; to acquire, hold, manage and operate canals, reservoirs, dams, ditches, flumes, acqueducts, pipes, water and electric lines, machinery, factories, and other property for the general purposes herein stated; to acquire, hold, manage and operate buildings, tanks pipes and pipe lines, and any and all other appliances for manufacturing, producing and distributing gas; and to own, hold and operate factories for the manufacture of any and all useful articles and to sell, trade or deal in the products thereof.

To acquire by purchase, or otherwise, from any person, firm or corporation, town, incorporated villages, cities or counties, property, rights, privileges and franchises that may be deemed of value to this corporation in carrying out or in connection with any or all of the objects for which this corporation is formed, as set forth herein; to mine or otherwise to extract or remove coal, ores, stone, oil and gas and any other kinds of materials and timber from any lands held by the company.

To construct bridges, buildings, machinery, engines, cars and other equipment, elevators, water works, gas works and electric works, viaducts and any other means of transportation, and to sell the same or otherwise dispose of, or to maintain and operate the same.

To breed, raise, feed, sell, slaughter, pack, preserve, prepare for market, transport, import, export, deal in and with cattle, hogs, sheep, and any and all domestic or wild animals suitable for food, and with any article or product, or article in the manufacture or composition of which the aforesaid products of any kind or nature are an adjunct or factor; intending to buy, sell, or provide for market all supplies, materials, or articles necessary, convenient or incidental to a general packing plant; also to make, manufacture, buy, sell, deal in ice, and in connection therewith to construct, lease, own and operate a plant for the manufacture of ice, and to do each and everything

necessary, suitable or proper for the accomplishment of the manufacturing, preparing for market, transporting, exporting, dealing in and with any article in the manufacture or composition of which ice is an adjunct or factor, and to acquire, hold, manage and operate buildings, tanks, cars, machinery, pipes, and any and all other appliances for the manufacturing, producing and distributing of ice, also to raise, produce, buy, sell, store, prepare for market, transport, import, deal in poultry, eggs, meats, vegetables, fruits and all products needing storage; hereby intending to store, buy, sell and prepare for market all and every kind of food and liquid product; also to purchase, lease, exchange, hire or otherwise acquire any and all privileges, pursuits, franchises, suitable or convenient for the purchase, manufacturing, selling or distributing of cold, heat, and to acquire, hold, manage or operate plants, machinery and pipes and pipe lines and all the appliances for manufacturing, producing and distributing, cold and heat; also to raise, produce, manufacture. buy, sell and deal in and with cotton seed as well as the products of which it is a constituent; also to manufacture, prepare for market, transport, import, export, deal in and with any article or product in the manufacture or composition of which cotton seed of any kind or character is an adjunct or factor; and to acquire by purchase, manufacture, or otherwise, all supplies, and materials and articles necessary or convenient to use in connection with and at the times necessary, concerning or incident to a storage or cold storage business.

To engage in any other manufacturing, mining, construction or transportation business of any kind or character whatsoever, and to do and to acquire, hold, own and dispose of any and all property, assets, stocks, bonds and rights of any kind and every kind whatsoever; to acquire by purchase, subscription or otherwise, and to hold or dispose of bonds or any other obligations of any other corporation.

To own, hold and control the stock of the Sand Springs Railway Company, and to operate said road as it now exists or may hereafter exist, as contemplated by its Charter and the laws of the State of Oklahoma, including in its right the rights to own the franchise heretofore granted by the City of Tulsa to the Sand Springs Railway Company; to own its stock in such other corporations as may hereafter be transferred to it, and should it be expedient to operate the holdings of said corporations, all of these powers to be in accordance with the laws of the State of Oklahoma and the rules and regulations of the Corporation Commission.

To employ managers, superintendents, teachers, laborers, skilled and unskilled, physicians and attorney or attorneys at law, and to do any and all things lawful and necessary, incident or convenient to carry out the foregoing purposes.

That the objects for which this corporation is formed may be for the charitable and benevolent purposes herein set forth, and none other, this corporation is accepted, and the trustees, for themselves and their successors, here accept their offices with the understanding and agreement that they shall receive no pay or emolument or benefit, direct or indirect, by reason of their trusteeship, except during the life of the said Charles Page and such trustees shall receive the sum of five dollars ($5.00) per year, payable quarterly, and after the death of said Charles Page said trustees, and their successors, shall receive the sum of five thousand dollars ($5000.00) per year, in full for their services as such trustees, each, payable monthly.

PROVIDED, that should in years to come, the sum of Five Thousand Dollars ($5,000.00) herein provided as compensation for each trustee, become inndequate, application may be made to the Judges of the Supreme Court of the

State of Oklahoma, and said Judges shall make, upon such showing as they deem sufficient, a suitable allowance to said trustees for their services rendered and to be rendered.

IN WITNESS WHEREOF, We have hereunto subscribed our names this 1st day of August, A. D. 1918.

This certificate is issued subject to the following constitutional requirement, i. e., that the corporation to which it is issued will submit any differences it may have with employees, with reference to labor, to arbitration, as shall be provided by law.

The petitioner has no stockholders. During the year 1922 it was managed by five trustees, who received no salaries, except one who was paid $150 per month for acting as superintendent of the Home to which work he devoted his entire time.

When the petitioner was first incorporated it had no assets that produced income. Charles Page from time to time transferred to it land and other assets. In the year 1914 or 1915 he transferred to it an oil and gas lease known as the "Atkins Lease," which has up to the present time produced a substantial income. The income not necessary for carrying out the petitioner's charitable activities has been reinvested in various enterprises which produce income, the excess income being invested for the purpose of accumulating an endowment fund.

In the year 1922 the charitable activities of the petitioner consisted in maintaining a large dormitory for orphan children, who were given food, clothing, shelter, medical and dental treatment, and primary education at the expense of the petitioner. They were later sent by the petitioner to public schools and some of them were subsequently educated in universities. A widows' colony was maintained where widows, especially those with children, who were unable to support themselves were furnished with cottages, light, water, gas, milk and ice, and in some cases with food and clothing. The petitioner also maintained a day nursery for the children of widows who had employment; an oral school where deaf children were taught, and a non-sectarian church. The petitioner also contributed money to the Salvation Army and other similar organizations; on occasions it opened an amusement park owned by it to charitable, benevolent and religious organizations for picnics, etc.; it furnished to the Light House Rescue Mission the use of the buildings occupied by it and it furnished camps to the Boy Scouts and the colored girls' Y. W. C. A. It distributed food and clothing to persons in need and at Christmas time made a canvas of the whole vicinity for the purpose of furnishing boxes to all needy persons. Persons out of employment were given money at times to assist them until they could secure work, and needy persons were treated at the expense of the petitioner in the Sand Springs Home hospital. Bottled water is furnished free to numerous religious and charitable

institutions, medical and dental attention is also furnished without cost to needy persons by the petitioner, and it sends tubercular patients to Colorado for treatment. The petitioner also maintains a business college where pupils able to pay are required to pay, but those unable to pay are taught free. It furnishes school books and clothing to poor children who are not inmates of the institution and it maintains a cemetery and furnishes burial lots to the poor without cost, and in some cases furnishes caskets and burial clothing.

Orphan children are received at the home at all ages from birth up to twelve years. Those received before the age of twelve are maintained by the home until they become self supporting.

For the purpose of supplying provisions for its charitable activities, the petitioner maintains upon its own land farms, gardens, a dairy, a cereal mill, a cannery, and a cold storage plant, and produces its own wheat, flour, vegetables and fruits of all kinds, and milk, poultry, beef and pork. All provisions used by the petitioner during the year 1922, with the exception of salt, sugar, tea, coffee and spices, were produced by it on its own land. The petitioner produces on its land a surplus of provisions, and this surplus, amounting to about 10 per cent of the total produced, is sold to the general public at regular market prices.

In order to produce income with which to carry on its charitable activities and to accumulate a permanent endowment, the petitioner operates oil and gas leases, and sells oil to refineries and gas to distributing companies. It generates and sells electricity for light and power, and maintains a reservoir from which water is sold to the general public at commercial rates. It operates a greenhouse where flowers and shrubs are raised and sold to the general public at commercial prices; and the greater portion of the spring water from springs on its premises is bottled and sold to the public at 10 cents a bottle, which is the usual price in the vicinity. The petitioner also owns and operates a cotton gin in which it gins not only its own cotton but that of the general public, and charges the rates fixed by the Corporation Commission of Oklahoma. The petitioner also owns an amusement park, known as Sand Springs Park, which is leased to a corporation which operates it for profit, but the children and other persons supported by the petitioner are allowed free access to the park and to all the amusements therein. The petitioner also owns all of the capital stock of the Sand Springs Gas Co., the Sand Springs Power Light & Water Co., and the Sand Springs Park Corporation. In its business activities, the petitioner trades with the general public and competes with other corporations and individuals engaged in similar business.

The entire net income of the petitioner is spent in carrying on its charitable activities and in accumulating an endowment fund. The

record does not show, however, what part of the petitioner's net income is expended for charitable purposes and what part is retained by it. No part of the petitioner's net earnings inures to the benefit of any individual, except the amounts paid to employees for services rendered, and the amounts distributed by way of charity to destitute or needy persons.

The Commissioner determined that the petitioner was subject to the Federal income tax for the year 1922, and asserted a deficiency in tax in the amount of $232,868.60.

OPINION.

MARQUETTE: The record in this appeal presents for our determination the single question of whether or not the petitioner was during the year 1922 exempt from taxation under section 231 of the Revenue Act of 1921, which provides in part:

That the following organizations shall be exempt from taxation under this title—

\*        \*        \*        \*        \*        \*        \*

(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual.

It is agreed by the parties hereto that if the petitioner is exempt from taxation under the provision of law just quoted there is no deficiency, and that if it is not exempt the deficiency determined by the Commissioner should be approved.

Upon consideration of the evidence herein we are of the opinion that the petitioner is a corporation organized and operated exclusively for charitable purposes; that no part of its net earnings inures to the benefit of any private stockholder or individual; and that it is entitled to the exemption claimed. It was organized, as its articles of incorporation show, for the purpose of establishing and maintaining a home and school for the benefit of poor white children and poor, old and infirm white persons, and it is and has been since its organization operated for that purpose. It has no stockholders who could benefit from its earnings, its affairs being operated and maintained by five trustees who receive and can receive only the nominal compensation provided for them by the articles of incorporation; and no part of its net earnings inures or can inure under the articles of incorporation to any private individual other than the persons and classes who are designated as the objects of its charitable activities. The respondent admits that the petitioner is a charitable institution but contends that it is not operated exclusively for chari-

table purposes, since it owns and operates a number of business enterprises which produce income more than sufficient for carrying out its charitable activities and which are in direct competition with individuals and noneleemosynary corporations. This contention presents no difficulties here. It is true that the petitioner owns a large amount of property and a number of business enterprises which are producing and in the past have produced income in excess of the amounts required to maintain the Home and the other charitable activities in which the petitioner is engaged. These income-producing enterprises are provided for by the petitioner's articles of incorporation which recite that as—

* * * incident and auxiliary to said trust and in order that sufficient funds may be obtained to carry out the charities herein set forth * * * [and] * * * particularly that said corporation and its holdings may be so managed that it shall forever be self supporting, the monies, interest in profits so obtained to be used only in such manner as shall be most conducive to the proper carrying out of the charitable and benevolent purposes herein stated.

However, the fact that the petitioner owns property which produces income in excess of its immediate needs does not alter or change its character or make it any the less a corporation organized and operated for charitable purposes. If an organization designed and established to dispense charity on a large scale is to be effective, it can not itself be entirely and continually dependent on the charitable whims of individuals and be compelled to seek funds for its activities by constant appeals to those persons of means who may be charitably inclined. It is proper that these organized charities should have large permanent endowments in order to provide revenue sufficient to supply the immediate needs of their charitable activities and to enable them to enlarge and expand those activities as occasion may require. This petitioner is in a fortunate position among corporations of its kind. It has happened that the property turned over to it by its founder has proved to be extremely valuable and has produced income not only sufficient to take care of the immediate needs of its charitable enterprises but also to increase its permanent endowment. This income not only enables it to dispense charity on a large scale but makes it potentially a dispenser of charity on a still larger scale as the objects of its bounty may increase in number. In this way it serves and can continue to serve the public by caring for destitute and infirm persons who might otherwise become public charges.

The question here presented is not a new one. In the case of *Trinidad* v. *Sagrada Orden de Predicadores*, 263 U. S. 578, the Supreme Court of the United States had before it a situation which is practically identical with the situation involved herein. In that case Sagrada Orden de Predicadores was a corporation organized

and operated under the laws of the Philippine Islands for religious, benevolent, scientific and educational purposes.  It had large properties in the Philippines consisting of real estate, stocks in private corporations, and money loaned at interest, all of which were held and used as sources from which to obtain funds or revenue for carrying on its religious, charitable and educational work.  The bulk of its income consisted of rents, dividends and interest derived from these properties.  A tax was levied on the corporation's net income for the year 1913 under the authority of the Revenue Act of 1913. That Act contained, as does the Revenue Act of 1921, a provision exempting from taxation any corporation " organized and operated exclusively for religious, charitable, scientific or educational purposes, no part of the net income of which inures to the benefit of any private stockholder or individual."  The corporation paid the tax under protest and brought suit to recover the amount so paid.  The Government conceded that the corporation was organized and operated for religious, charitable and educational purposes and that no part of its net income inured to the benefit of any stockholder or individual, but contended that it was not operated exclusively for those purposes and was not therefore within the exception in the taxing act.  The Supreme Court of the United States, holding that the corporation was exempt from taxation under the Revenue Act of 1913, said:

Whether the contention is well taken turns primarily on the meaning of the excepting clause, before quoted from the taxing act.  Two matters apparent on the face of the clause go far towards settling its meaning.  First, it recognizes that a corporation may be organized and operated exclusively for religious, charitable, scientific or educational purposes, and yet have a net income. Next, it says nothing about the source of the income, but makes the destination the ultimate test of exemption.

Evidently the exemption is made in recognition of the benefit which the public derives from corporate activities of the classes named, and is intended to aid them when not conducted for private gain.  Such activities cannot be carried on without money; and it is common knowledge that they are largely carried on with income received from properties dedicated to their pursuit. This is particularly true of many charitable, scientific, and educational corporations and is measurably true of some religious corporations.  Making such properties productive to the end that the income may be thus used does not alter or enlarge the purposes for which the corporation is created and conducted.

\*        \*        \*        \*        \*        \*        \*

\* \* \* In using the properties to produce the income it therefore is adhering to and advancing those purposes, and not stepping aside from them or engaging in a business pursuit.

In the *Appeal of Unity School of Christianity*, 4 B. T. A. 61, this Board held that a corporation otherwise exempt from tax is not deprived of exemption because it carries on profitable or competitive

activities in furtherance of its predominant religious, charitable, scientific or educational purpose.  In that appeal the Board said:

The argument of the Commissioner here is similar in effect although substantially different in its emphasis.  It is said that the several departments of the corporation, such as the inn and the publications, are conducted in competition with purely commercial ventures, so that every meal served at the inn takes so much from a competing restaurant and that each book sold deprives another publisher of a similar sale.  This, it is said, deprives the corporation of an exclusively religious, charitable or educational character.  As the basis for this contention it is apparent that the Commissioner relies upon the incidental statement by the court in the *Trinidad* case that " it is not claimed that there is any selling to the public or in competition with others."

For the purpose and operations of this corporation we must look to the evidence, and it is manifest that the entire reason for its existence is an altruistic purpose to promote a religion and the spiritual welfare of mankind.  If for some unforeseen reason the corporation were no longer permitted or enabled to fulfill this purpose, it would have no cause to continue in existence.  Religion and education dominate its activities and all else is incidental to this end.

Can it then be said that the financial aspects of the conduct of the inn or of the farm or of the publication of the books and periodicals are such as to make the statutory word " exclusively " inapplicable?  We think not.  There is nothing in the statute which justifies the Government's emphasis upon the competitive aspect of its selling.  The inquiry must always be whether all of the activities of the organization in question are devoted to furthering its predominant religious, charitable, scientific or educational purpose—are all of its activities designed and carried on to advance religion, charity, science or education?  If these purposes or any of them are the controlling reasons for the corporation's existence and all things are devoted by it to that end, the congressional purpose of exemption, " made in recognition of the benefit which the public derives," should not be defeated because its incidental features are to some extent profitable.  It is only when such profits or net income are used for private rather than public benefit that Congress has taxed them.

The respondent in support of his contention has cited a number of cases from State courts relative to the exemption from direct property taxes of certain property owned by religious, charitable or educational institutions under State constitutions or laws providing that property *used* exclusively for educational, religious or charitable purposes shall be exempt.  The decisions in those cases uniformly hold that under these constitutional or legal provisions the property itself must be directly devoted to educational, religious or charitable purposes in order to be exempt from the tax.  For example, under these provisions a building owned by a religious organization and used as a church is exempt, but a building owned by the same organization used for commercial purposes is not.  However, in our opinion these cases are not in point here.  As stated by the Supreme Court of the United States in the case of *Trinidad* v. *Sagrada Orden de*

*Predicadores, supra,* the test here is not the source of the income but its ultimate destination. It is not difficult to conceive that property owned by religious, charitable or educational institutions may be subject to a direct property tax levied by a State or a subdivision thereof, while the income from that property may be exempt from taxation under the revenue laws of the United States.

We conclude that the petitioner is a corporation such as is contemplated by section 231(6) of the Revenue Act of 1921 and that its income for the year 1922 is not subject to tax.

*Judgment will be entered for the petitioner.*

MORRIS not participating.