## COMMISSIONER OF INTERNAL REVENUE v. BATTLE CREEK, Inc.

### No. 9911.

Circuit Court of Appeals, Fifth Circuit.

March 17, 1942.

Arthur A. Armstrong, J. Louis Monarch, Sewall Key, Helen R. Carloss, and John J. Pringle, Jr., Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Ellyne E. Strickland, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

Douglas D. Felix, of Miami, Fla., for respondent.

Before FOSTER, SIBLEY, and McCORD, Circuit Judges.

FOSTER, Circuit Judge.

The Commissioner determined a deficiency of $501.62 in the payment of income taxes for the year ending December 31, 1934, by Battle Creek, Incorporated. The taxpayer petitioned the Board of Tax Appeals for a redetermination of the taxes assessed, denied the deficiency and asked for a refund of $1,966.19, as an overpayment, claiming exemption from taxes as a charitable institution, under the provisions of Section 101(6) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Code, § 101(6).

There is no dispute as to the material facts as found by the Board. It appears that as the result of negotiations between Dr. John Harvey Kellogg, founder of the Michigan Sanitarium and Benevolent Association, known as Battle Creek Sanitarium, and Curtiss-Bright Co., a Florida corporation, the corporation agreed to donate and transfer by conditional deed, to a corporation to be organized, certain land and buildings situated at Miami Springs, Florida. Francis M. Miller, an attorney at law, represented both parties in their negotiations and advised that the corporation should be organized under the general corporation laws of Florida, instead of under the laws relating to the organization of non-profit corporations, as it would be easier to cancel the deed in the event its conditions were violated. This was agreed to and Battle Creek, Incorporated, was organized.

The charter provided that the general nature of the business was to teach the theory and practice of biologic living as developed and exemplified at the Battle Creek Sanitarium under the direction of Dr. John Harvey Kellogg, to care for and treat the sick and to so train and educate the sick and the well as to prevent disease and disability and promote efficiency and longevity, with other provisions of a similar nature. The charter also authorized the corporation to conduct any other lawful business. The property was donated to Battle Creek, Inc., by deed with the provisions that for a period of six years from the first day of October, 1930, the premises should be used as a sanitarium and/or health centre and during that time would be used and operated as such for not less than six months of each year under the supervision of Dr. John Harvey Kellogg or the organization that he would create. There were other provisions unnecessary to state. The deed further provided that upon any breach of the covenants and provisions, the said lands and improvements thereon and equipment should revert to the grantor, its successors or assigns upon demand.

The sanitarium maintained a regular schedule of rates, which were charged to patients, who were able to pay. Others who were unable to pay full rates paid nothing or a fraction of the regular charge.

During the period from December 1, 1930, to December 31, 1935, 1,058 house patients were treated at the sanitarium. Of these 515 were charged the full rate. 533 paid a portion of the regular charges and 10 paid nothing. During the same period 1,776 day patients were treated at the clinic. 926 were charged regular rates. 705 were treated free and 145 paid a portion of the regular rates. During the same period the sanitarium made 1,090 laboratory tests and gave dietetic consultations to 750 patients free of charge. The staff of the institution gave free lectures on maintenance of good health and the prevention of disease. In 1935, when a hurricane occurred in that section of the state, the institution sheltered and fed over 600 persons, for which no charges were made. The corporation never paid any dividends on its capital stock. Dr. Kellogg made advances to Battle Creek, Inc., and was credited with salary as president and treasurer on its books but he never drew any of the amounts of salary so credited to him. After Battle Creek, Inc., had occupied the premises for approximately five years Miller persuaded the Curtiss-Bright Co. to give it a new unconditional deed to the property without waiting for the six year period stipulated in the original deed and recommended that the corporation be dissolved and its assets and liabilities transferred to a corporation to be organized under the general educational, non-profit laws of Florida. In 1935 all the assets of Battle Creek, Inc., were transferred to the newly formed corporation, which assumed its indebtedness. On October 31, 1939, the account payable to Dr. Kellogg in the sum of $28,593.22 for salaries credited to him, was debited in that sum and capital credited with the same amount.

On the above facts, somewhat amplified in a memorandum opinion, not published, the Board held that Battle Creek, Inc., was a charitable institution, pointing out wherein the facts differed from those in other cases apparently in conflict. The petitioner bases his contentions principally upon the provisions of the charter, authorizing the corporation to engage in any other lawful business.

We agree with the Board. There is no doubt it was the intention of the Curtiss-Bright Co. in making the gift of the land and buildings thereon to create an institution similar to the Michigan Battle Creek Sanitarium when anyone not able to pay could receive treatment free. It is not unusual for charters of corporations to grant broad powers and privileges that are never intended to be used. That does not control the specific purposes of the incorporation. It is also usual for hospitals and sanitariums to charge those able to pay for services rendered, in order to pay the expenses of the institution, while not denying treatment to others unable to pay anything. Such institutions are classed as charitable. The following authorities sustain these conclusions: Appeal of Unity School of Christianity, 4 B.T.A. 61; Roche's Beach, Inc., v. Comm., 2 Cir., 96 F.2d 776; 10 Am.Jur. § 135 "Charities"; Cf. Koon Kreek Klub v. Thomas, 5 Cir., 108 F.2d 616. Helvering, Comm. v. Coleman-Gilbert Associates, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278, is not to the contrary.

The petition is denied and the judgment of the board is affirmed.