**UNITED STATES v. COMMUNITY SERVICES, Inc.**

**No. 6230.**

United States Court of Appeals, Fourth Circuit.

Argued April 9, 1951.

Decided May 5, 1951.

---

8. In the court's opinion on petition for rehearing, 95 F.2d 238, the claim for interest was rejected on equitable grounds.

Harry Baum, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., Ben Scott Whaley, U. S. Atty., and Russell D. Miller, Asst. U. S. Atty., Charleston, S. C., on the brief), for appellant.

Fleming Bomar, Washington, D. C., for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Community Services, Inc., (hereinafter called taxpayer) filed employment tax returns under the Federal Insurance Contributions Act, subchapter A of chapter 9 of the Internal Revenue Code, 26 U.S.C.A. § 1400 et seq., for the period July 23, 1945, to December 31, 1947, and paid employment taxes totaling $3,910.16 for this period. Thereafter it filed, in the United States District Court for the Eastern District of South Carolina, a claim for refund on the ground that it was exempt from tax under Section 1426(b)(8) of the Internal Revenue Code, 26 U.S.C.A. § 1426(b)(8). The claim for refund was denied, and taxpayer instituted suit for refund. The District Court held "as a matter of law" that taxpayer was exempt from employment taxes under Section 1426(b)(8), on the theory that taxpayer is "organized and operated exclusively for * * * charitable * * purposes" within the meaning of Section 1426(b)(8) if its profits are destined for charitable organizations. The case is before us on appeal by the United States.

The only question before us is whether a corporation engaging in ordinary business activity for profit is exempt from employment taxes under Section 1426(b)(8) of the Internal Revenue Code solely by reason of the fact that its profits are payable to exempt charitable organizations.

The material facts were stipulated and may be briefly summarized.

Taxpayer corporation was organized on July 23, 1945, as a non-stock membership corporation under the laws of South Carolina. Its charter states: "Fourth: The purpose of the said proposed corporation is to receive donations of cash and properties through gift, bequest, devise or otherwise, and to own and operate a canteen refreshment service and other business ventures for the convenience of the employees of Graniteville Company and the people of the communities in which its mills are operated, and to conduct other businesses in order to earn profits, to the end that all funds, properties, and all profits so earned and derived therefrom shall be devoted exclusively to religious, charitable, scientific, literary and/or educational purposes."

The by-laws of the corporation recite the same purposes and further provide: "The nature, extent and location of the canteen refreshment service, other business ventures and businesses of the Corporation, and the details of the devoting of its net profits to the objects set out in the charter of the Corporation and the choosing of such objects and the beneficiaries of the bounty of the corporation; and all details connected with the operations and activities of the Corporation are to be determined from time to time, as the exigencies of the business of the Corporation require, by the Board of Directors, subject always to the provisions of Section 2 of this Article."

The members of the corporation throughout the taxable period (July 23, 1945–December 31, 1947), who also constituted its board of directors, were the president, vice-president, and two other executives of the Graniteville Company, and a civic leader in the community. The Graniteville Company is a textile manufacturing corporation having its principal office and plants in Graniteville, South Carolina, and employs about 5,000 persons.

Prior to taxpayer's formation, the Graniteville Company operated a canteen refreshment service in its various plants, and also sold coal and ice to its employees. On the day taxpayer was organized the Graniteville Company donated to it $25,000, and authorized it to operate all concessions pre-

viously operated by Graniteville. Thereafter and during the taxable period taxpayer operated a canteen refreshment service, a coal and wood yard, a filling station, and an electrical appliance store. Eighty-five per cent of its gross receipts was derived from the sale of soft drinks, milk, candy, sandwiches and similar items to employees of Graniteville Company. The balance of its gross receipts was derived from the sale of coal, ice, gasoline, and home appliances to Graniteville Company's employees and their families. No sales were made to the general public. Taxpayer also leased from the Graniteville Company at a nominal rental a filling station and a dining room, both of which were operated by taxpayer during 1945. Thereafter, taxpayer sublet the filling station and dining room at a profit to one Reeves, who operated them as tenant of taxpayer. All of taxpayer's operations were conducted on properties owned by or leased from Graniteville Company. Taxpayer's officers and directors received no compensation. To carry on its business taxpayer employed about 50 persons, who received salaries and wages of $26,658 in 1945, $85,765 in 1946, $92,051 in 1947, and $102,853 in 1948.

From the date of its incorporation in July of 1945, to the end of that year taxpayer had a small ($482) operating loss. For 1946 its net profits amounted to $3,492, no part of which was contributed to charitable or like institutions. For 1947 its net profits amounted to $19,381, of which $3,696 was contributed to charitable and educational institutions. For 1948 its net profits amounted to $37,738 (including contributions totaling $550), of which $9,865 was contributed to charitable institutions. Taxpayer's total receipts exceeded total disbursements by $24,517 in 1945, by $3,492 in 1946, by $15,865 in 1947, and by $27,873 in 1948. It retained this excess as a reserve against taxes which might be adjudged due to the Government.

■ Code Section 1426(b)(8), dealing with exemptions from employment tax, is drawn from and contains the same language as Section 101(6), dealing with exemptions from income tax. It exempts from tax a corporation which (1) is "organized and op-

erated exclusively for religious, charitable, scientific, literary, or educational purposes"; (2) "no part of the net earnings of which inures to the benefit of any private shareholder or individual"; and (3) "no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation". The long-standing implementing Treasury Regulations (Sec. 402.215 of Regulations 106) make it clear that these requirements constitute separate conditions precedent to exemptions, each of which must be met.

■ Taxpayer admittedly meets the second and third conditions. No part of its net earnings inures to the benefit of any private shareholder or individual, since its charter and by-laws both provide that its net earning shall inure to the benefit of charitable institutions. Nor does any part of its activities consist of attempting to influence legislation. It is the first condition, namely, that the corporation be "organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes" with which we are concerned.

We think the District Judge erred in his interpretation of the tax-exemption statute, and, therefore, the judgment below must be reversed.

■ There is no merit in taxpayer's contention that it is entitled to the claimed exemption because it was incorporated under the charitable corporation laws of South Carolina. We are here construing and applying the terms of a federal statute. This contention was effectively disposed of in Better Business Bureau of Washington, D. C., v. United States, 326 U.S. 279, 285, note 3, 66 S.Ct. 112, 90 L.Ed. 67.

■ Taxpayer was, in effect, organized and operated for two purposes: (1) to engage in commercial business, for profit, and (2) to turn over the profits realized from its commercial activities to charitable organizations. The second purpose is charitable; the first purpose clearly is not. To qualify for the exemption here, the corporation must be "organized and operated *exclusively* for * * * charitable * * * purposes". As was said by Mr. Justice Murphy in the Better Business Bureau case,

326 U.S. at page 283, 66 S.Ct. at page 114: "This plainly means that the presence of a single non-educational purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of truly educational purposes."

This language is even more strongly applicable to the instant case, for not one of taxpayer's *activities* was charitable. On the contrary, these activities were all commercial.

■ For tax-exemption purposes, the charitable nature of the distributees of its income cannot be attributable to the taxpayer. The corporation earning the income and claiming the exemption, ràther than the recipients of the income, must be organized and operated exclusively for charitable purposes. Otherwise a purely commercial corporation could claim the exemption, if all its stock were owned by an exempt corporation, which would receive, as dividends, all the net earnings of the commercial corporation. Clearly this is not the law. National Carbide Corporation v. Commissioner, 336 U.S. 422, 69 S.Ct. 726, 93 L.Ed. 779; Moline Properties v. Commissioner, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499; Burnet v. Commonwealth Improvement Co., 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399; Bear Gulch Water Co. v. Commissioner, 9 Cir., 116 F.2d 975; certiorari denied, 314 U.S. 652, 62 S.Ct. 99, 86 L.Ed. 523; Gagne v. Hanover Water Works Co., 1 Cir., 92 F.2d 659; C. F. Mueller Co. v. Commissioner, 14 T. C. 922, pending on appeal to U. S. Court of Appeals, Third Circuit.

■ For purposes of tax-exemption, it is quite immaterial that taxpayer's charter authorized it to operate "business ventures for the convenience of the employees of Graniteville Company and the people of the communities in which its mills are operated." Many commercial corporations are financially successful because they serve the convenience of a single community. But the taxpayer is not so restricted in its activities, for its charter empowers it to carry on "other businesses in order to earn profits."

■ Manifestly, a corporation engaged in commercial activities, if exempt from federal taxes, would have a tremendous economic advantage over competitors in the same field. Such a corporation could effectively eliminate competitors, actual and potential, since it could undersell corporations, whose earnings are subject to diminution by federal taxation. It is difficult to believe that Congress intended to countenance such a situation.

In the opinion below it is stated: "The language used in the exemption clause of the cited sections should be construed broadly and literally to effect the clearly intended purpose of Congress to aid charity, education, science and religion in their all inclusive senses."

And, in favor of such a construction, are cited Old Colony Trust Co. v. Commissioner, 301 U.S. 379, 57 S.Ct. 813, 81 L.Ed. 1169; Helvering v. Bliss, 293 U.S. 144, 150, 55 S.Ct. 17, 79 L.Ed. 246. But we must recognize the fact that tax exemptions are matters of legislative grace, which must, accordingly, be strictly construed against the taxpayer. Helvering v. Ohio Leather Co., 317 U.S. 102, 106, 63 S.Ct. 103, 87 L.Ed. 113; Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 49, 61 S.Ct. 109, 85 L.Ed. 29; Cornell v. Coyne, 192 U.S. 418, 431, 24 S.Ct. 383, 48 L.Ed. 504. While these general rules of statutory interpretation are sometimes helpful to resolve ambiguities in close cases, they should never be used to defeat any plainly expressed legislative intent such as we find here. And, again to quote Mr. Justice Murphy, in the Better Business Bureau case, supra, 326 U.S. at page 283, 66 S.Ct. at page 114: "Even the most liberal of constructions does not mean that statutory words and phrases are to be given unusual or tortured meanings unjustified by legislative intent or that express limitations on such an exemption are to be ignored."

Had Congress intended to accord tax exempt status to a corporation, regardless of the nature of its own activities, solely because its profits are distributed to exempt organizations, it would have been an easy matter to say this, simply and clearly. The express exemptions made by sections 101(14), 101(6), 1426(b)(8), 23(q)(2) of the Internal Revenue Code, 26 U.S.C.A. §§

101(6, 14), 1426(b)(8), 23(q)(2), would seem to negative any further exceptions. See, dissenting opinion of Judge Learned Hand, in Roche's Beach, Inc., v. Commissioner, 2 Cir., 96 F.2d 776, 779; Keystone Automobile Club v. Commissioner, 3 Cir., 181 F.2d 402; Better Business Bureau case, supra. These provisions, and these opinions, lend color to the view that tax exemption for a corporation is based on its own activities and purposes rather than those of the ultimate recipients of its income.

Further support for the view we have expressed is found in the legislative history of the exemption statutes. Code Section 1426(b)(8), patterned after Section 101(6), originally appeared as Section 811(b)(8) of the Social Security Act, 42 U.S.C.A. § 1011(b)(8). The committee reports accompanying that Act state (H.Rep. No. 615, 74th Cong., 1st Sess., p. 33; 1939–2 Cum.Bull. 600, 607; S.Rep. No. 628, 74th Cong., 1st Sess., p. 54; 1939–2 Cum.Bull. 611, 621): "The organizations which will be exempt from such taxes are churches, schools, colleges, and other educational institutions not operated for private profit, the Y.M.C.A., the Y.W.C.A., the Y.M.H.A., the Salvation Army, and other organizations which are exempt from income tax under section 101(6) of the Revenue Act of 1932."

Surely, taxpayer is not a corporation even similar to those mentioned in the committee reports.

In 1950, Congress passed a statute (inapplicable to the case before us) which definitely denies exemption to that class of corporations in which taxpayer falls. The Revenue Act of 1950, Public Law 814, 81st Congress, 2nd Session, adds at the end of Code Section 101: "An organization operated for the primary purpose of carrying on a trade or business for profit shall not be exempt under any paragraph of this section on the ground that all of its profits are payable to one or more organizations exempt under this section from taxation."

Section 303 of the Act, 26 U.S.C.A. § 421 note, provides: "The determination as to whether an organization is exempt under section 101 of the Internal Revenue Code from taxation for any taxable year beginning before January 1, 1951, shall be made as if section 301(b) of this Act had not been enacted and *without inferences drawn from the fact that the amendment made by such section is not expressly made applicable with respect to taxable years beginning before January 1, 1951."* (Italics ours.)

House Report No. 2319, 81st Congress, 2nd. Session, pages 36–37, 41–42, 124, is very revealing. This report, in part, reads:

"The effect of this amendment is to prevent the exemption of a trade or business organization under section 101 on the grounds that an organization actually described in section 101 receives the earnings from the operations of the trade or business organization. *In any case it appears clear to your committee that such an organization is not itself carrying out an exempt purpose.* Moreover, it obviously is in direct competition with other taxable business. This amendment applies only with respect to taxable years beginning after December 31, 1950. No implications should be drawn from it as to the present tax status of such organization.

"The determination of the tax treatment of such feeder organizations for taxable years beginning prior to January 1, 1951, is to be made as if this subsection of the bill had not been enacted and *without inference drawn from the fact that the amendment made by this subsection of the Bill is not expressly made applicable to such taxable years.* In the area covered by this amendment there has been litigation as to the application of such a rule under existing law (cf. Roche's Beach Inc., v. Commissioner, 2 Cir., 1938, 96 F.2d 776; Universal Oil Products Co. v. Campbell, 7 Cir., 1950, 181 F.2d 451; Willingham v. Home Oil Mill, 5 Cir., 1950, 181 F.2d 9; C. F. Mueller Co. v. Commissioner, 14 T.C. 922.) *The amendment is intended to show clearly what, from its effective date, the rule is to be,* without disturbing the determination in present litigation of the rule of existing law." (Italics ours.)

■ All this, we think, shows rather clearly that Congress, in enacting this statute, was clarifying rather than changing

the existing law. As to the extent to which subsequent legislation may be considered in aid of the interpretation of prior legislation in the same field, see: Great Northern Railway Co. v. United States, 315 U.S. 262, 277, 62 S.Ct. 529, 86 L.Ed. 836; Brewster v. Gage, 280 U.S. 327, 337, 50 S. Ct. 115, 74 L.Ed. 457; Hubbell v. Commissioner, 6 Cir., 150 F.2d 516, 522, 161 A.L.R. 764.

The cases in this field are legion, with holdings that are far from consistent. We discuss briefly some of the most important of these cases. Taxpayer relies heavily on the oft-cited case of Trinidad v. Sagrada Orden, 263 U.S. 578, 44 S.Ct. 204, 68 L.Ed. 458. Particular stress is laid on this extract, 263 U.S. at page 581, 44 S.Ct. at page 205, from Mr. Justice VanDevanter's rather brief opinion: "Whether the contention is well taken turns primarily on the meaning of the excepting clause, before quoted from the taxing act. Two matters apparent on the face of the clause go far towards settling its meaning. First, it recognizes that a corporation may be organized and operated exclusively for religious, charitable, scientific or educational purposes, and yet have a net income. Next, it says nothing about the source of the income, but makes the destination the ultimate test of exemption."

The force of this statement has been weakened by subsequent decisions hereinafter cited. Again that case differs from the one before us in at least three respects. In the Sagrada case, the corporation itself was a religious organization, the selling of wine, chocolate and other articles was incidental to its religious work and was slender in volume; in our case, taxpayer was not itself a charitable organization. Its entire activity was commercial (apart from the distribution of its profits), and the corporation subserved by its business activities was a textile mill. We think further, the real crux of the Sagrada Orden opinion is found in the following language, 263 U.S. at page 582, 44 S.Ct. at page 206: "As respects the transactions in wine, chocolate and other articles, we think they *do not amount to engaging in trade in any proper sense of the term. It is not claimed*

*that there is any selling to the public or in competition with others.* The articles are merely bought and supplied for use within the plaintiff's own organization and agencies—*some of them for strictly religious use, and the others for uses which are purely incidental to the work which the plaintiff is carrying on.* That the transactions yield some profit is in the circumstances a negligible factor. *Financial gain is not the end to which they are directed.* (Italics ours.)

The majority opinion in Roche's Beach, Inc., v. Commissioner, 2 Cir., 96 F.2d 776, opinion by Circuit Judge Swan, holds squarely in favor of taxpayer. The force of that case, however, is greatly weakened by the strong dissent of Judge Learned Hand, with which we heartily agree, and from which we quote; 96 F.2d at page 779: "It is possible that, if subdivision 14 had not been added to section 103, 26 U.S.C.A., § 103(14) and note, we ought to have read subdivision 6, 26 U.S.C.A. § 103(6) note, to comprise companies all of whose profits go to one of the purposes therein described although Trinidad v. Sagrada Orden, 263 U.S. 578, 44 S.Ct. 204, 68 L.Ed. 458, gives no color to such an interpretation; rather the reverse, for the business income of the taxpayer was there very trifling. * * * But subdivision 14 precludes any such reading. Obviously, as to all other subdivisions it meant that a subsidiary should not be exempted merely because its parent was exempt; that was indeed one condition, but the subsidiary must also confine its activities to the mere receipt of income. We are now holding that the subsidiary of a company exempt under subdivision 6 need not fulfill this second condition, but is *ex proprio vigore* as much within subdivision 6 as its parent. It might be desirable to prefer corporations within subdivision 6 in that way, but I cannot find any warrant for doing so. The purpose of subdivision 14 was to tax all business income, however destined, unless the company was really not in business at all."

And the same court that decided the Roche's Beach case seems to have restricted that holding in the case of Sun-Herald Corporation v. Duggan, 2 Cir., 160 F.2d 475.

428

In the light of what has been said, it would serve no useful purpose to discuss other cases relied upon by taxpayer. See, particularly, Willingham v. Home Oil Mill, 5 Cir., 181 F.2d 9; Commissioner of Internal Revenue v. Orton, 6 Cir., 173 F.2d 483; Debs Memorial Radio Fund v. Commissioner, 2 Cir., 148 F.2d 948; Bohemian Gymnastic Association v. Higgins, 2 Cir., 147 F.2d 774; Commissioner of Internal Revenue v. Battle Creek, Inc., 5 Cir., 126 F. 2d 405; Gimbel v. Commissioner, 3 Cir., 54 F.2d 780; Bok v. McCaughn, 3 Cir., 42 F. 2d 616; Southeastern Fair Association v. United States, 52 F.Supp. 219, 100 Ct.Cl. 216; Sand Springs Home v. Commissioner, 6 B.T.A. 198; Unity School of Christianity v. Commissioner, 4 B.T.A. 61; Estate of Louise V. Simpson, v. Commissioner, 2 T. C. 963.

In addition to the cases already discussed, the Government has cited a large number of cases. The most important of these are: New York v. United States, 326 U.S. 572, 66 S.Ct. 310, 90 L.Ed. 326; Allen v. Regents of University System of Georgia, 304 U.S. 439, 58 S.Ct. 980, 82 L.Ed. 1448; Chattanooga Auto Club v. Commissioner, 6 Cir., 182 F.2d 551; Universal Oil Products Co. v. Campbell, 7 Cir., 181 F. 2d 451; certiorari denied 340 U.S. 850, 71 S.Ct. 78; Smyth v. California State Automobile Association, 9 Cir., 175 F.2d 752; Davenport Foundation v. Commissioner, 9 Cir., 170 F.2d 70; Underwriters' Laboratories v. Commissioner, 7 Cir., 135 F.2d 371, certiorari denied 320 U.S. 756, 64 S. Ct. 63, 88 L.Ed. 450; Scholarship Endowment Foundation v. Nicholas, 10 Cir., 106 F.2d 552; Stanford University Book Store v. Helvering, 65 App.D.C. 364, 83 F.2d 710.

It cannot be denied that in the case cited by taxpayer and those cited by the Government, both the decisions reached on the facts and the views expressed in the opinions are so varied and so divergent, that they cannot readily be reconciled.

The judgment of the District Court is reversed.

Reversed.