**KANAWHA–ROANE LANDS, Inc.,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

Civ. A. No. 1259.

United States District Court
S. D. West Virginia, Charleston Division.

Dec. 27, 1955.

J. B. Fisher, Charleston, W. Va., for plaintiff.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe and Gilbert E. Andrews, Department of Justice, Washington, D. C., Duncan W. Daugherty, U. S. Atty., Huntington, W. Va., for defendant.

BOREMAN, District Judge, sitting by special designation.

This is a civil action before the Court in which the plaintiff seeks a refund of income taxes claimed to have been illegally collected by the defendant from the plaintiff for the year 1946 in the total amount of $1,052.12 plus interest.

These two questions are presented:

1. Is taxpayer a corporation or "club" exempt from income tax under the provisions of Section 101(9) of the Internal Revenue Code of 1939? 26 U.S.C.A. § 101(9).

2. Is taxpayer a corporation exempt from income tax under the provisions of Section 101(14) of the Internal Revenue Code of 1939? 26 U.S.C.A. § 101 (14).

The Internal Revenue Code of 1939 provides:

"§ 101. Exemptions from tax on corporations.

"The following organizations shall be exempt from taxation under this chapter * * *

"(9) Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder; * * *

"(14) Corporations organized for the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to an organization which itself is exempt from tax imposed by this chapter;"

Treasury Regulations 111, promulgated under the Internal Revenue Code of 1939, provide:

Sec. 29.101(9)—1. * * * Social Clubs. * * *

The exemption granted by Section 101 (9) applies to practically all social and recreation clubs which are supported by membership fees, dues and assessments. If a club engages in traffic, in agriculture or horticulture, or in the sale of timber, etc., for profit, such club is not organized and operated exclusively for pleasure, recreation or social purposes. Generally, an incidental sale of property will not deprive the club of the exemption.

Kanawha-Roane Lands, Inc., the plaintiff taxpayer, was incorporated under the laws of West Virginia on October 27,

1937. Taxpayer did not utilize the West Virginia statutory provisions for incorporation as a non-profit organization and its certificate of incorporation did not explicitly state that it was formed for non-profit purposes. Dale G. Casto, an experienced Charleston attorney, testified that he was engaged to take the necessary steps to form the corporation and that the statement of corporate purposes, listed in the certificate of incorporation, followed the instructions given to him by the incorporators.

Without reciting in full the corporate purposes as contained in the certificate, suffice it to say that included among the purposes were the development and maintenance of forests for the protection of game and fish, the acquisition of lands for the purpose of growing timber, providing private hunting and fishing areas, the operation of a hunting and fishing club, the establishment of a hunting and fishing preserve, and the providing of club houses and other buildings for the use of hunting and fishing clubs on such terms as the corporation saw fit. Additional corporate purposes included the acquisition and improvement of real property and the sale or lease of any of its property to the same extent as an individual person.

The Fleming Hunt Club, hereinafter sometimes referred to as "Hunt Club", is an unincorporated association which was organized in 1937 for the primary purpose of conducting for its members annual deer hunting expeditions in Virginia. This club maintained a log club house on the lands of Thomas W. Fleming adjoining the lands acquired by plaintiff, and the semi-annual hunt took place on the lands of the plaintiff and several thousand additional acres adjoining it. This adjoining acreage was leased from Fleming and the other respective owners for the purpose of hunting. The usual stipulation in the leases between the Hunt Club and the lessors was that the Hunt Club would pay the property taxes on the leased lands. However, the lease with Fleming provided that he would be paid $100 annually, in advance, with an additional $25 for his services in the hunt, and that Hunt Club members would obtain room and board from him at the then existing rates. The plaintiff was incorporated by the members of the Hunt Club, four of whom were the original incorporators, each subscribing to two shares of stock, beginning with $1,000 paid in as capital. The amount of total authorized stock is 100 shares of no par value.

In 1937, taxpayer entered into a contract of sale with the Star Ridge Company, Inc., whereby taxpayer acquired between 1,100 and 1,300 acres of land in Amelia County, Virginia; for $12,500, of which $4,500 was paid at the time of sale and the balance was paid in subsequent years. This acreage was leased by taxpayer to Fleming, the owner of adjoining acreage, for farm purposes. Under the terms of the lease, the lessee was required to protect the land against trespassers, cut fire lanes, paint and repair the structures thereon and pay all of the taxes on the land.

The Hunt Club was supported by membership fees, dues and assessments; it maintained its own bank account although it was testified that plaintiff's funds and funds of the Hunt Club were expended indiscriminately to defray the expenses of the hunts. The Hunt Club had its own by-laws and, although the by-laws of taxpayer did not contain any express restriction on stock ownership, the by-laws of the Hunt Club, sometime after the year 1940, provided that each member thereof would own at least one share of stock in taxpayer. On November 23, 1948, the by-laws of the Hunt Club were changed to provide that no applicant for membership therein would be given consideration or elected to membership unless he owned at least one share of stock in taxpayer. In 1942 the shares of stock in taxpayer, which had been purchased at a price of $150 per share, were held by thirty-one individual members of the Hunt Club in varying numbers of from one to four shares per member. At other times individual Hunt Club members had hold-

ings ranging from one-half share to six shares. The by-laws of taxpayer provided that if any shares were to be transferred to a person not approved by the Board of Directors, taxpayer would have the option of purchasing such shares at book value.

In 1942 taxpayer submitted two applications for recognition of status as a corporation exempt from income tax. Exemption was first claimed on the ground that taxpayer was exempt under Section 101(9) of the Internal Revenue Act, and later on the ground that it was exempt under Section 101(14). Both claims were denied by the Commissioner of Internal Revenue. The Hunt Club has never applied for a ruling in respect to its income tax status.

As the Court recalls the evidence, there is no record of any purchases of stock having been made by the corporation at a price greater than $150 per share. No applications for membership in the Hunt Club can be accepted until the total club membership is less than thirty. During the year 1946, the same individual served as Secretary and Treasurer of both the Hunt Club and the taxpayer corporation.

A part of the lands owned by the plaintiff was covered with fast growing pine trees. In the latter part of 1945, some of the stockholders of the plaintiff, who were also members of the Hunt Club, made a trip through the wooded areas of the plaintiff's land, inspected the trees and advised that some of the older trees which had reached their full growth should be cut in order to protect the younger trees, and recommended the removal of dying trees which had become a fire hazard, as well as a danger to hunters within the area. Accordingly, they had marked certain of the trees which they recommended for removal. In 1946, following the recommendation of the inspecting stockholders, the plaintiff authorized a lumber manufacturer, who was not connected with the plaintiff corporation in any way and who, therefore, was not a member of the Hunt Club, to enter upon the land and remove the previously marked trees, upon his agreement to pay to the plaintiff the prevailing market price for such timber as he thereby obtained. The sale was completed in 1946 and the price for said timber, being the sum of $4,282.76, was received by the plaintiff and deposited in its bank to its credit.

Prior to the sale of timber in 1946, the plaintiff had no receipts except those arising from the sale of its stock to persons approved for membership in the Hunt Club. The funds so received were deposited in the plaintiff's regular bank account.

After the money was received from the sale of timber, more than $2,800 was spent by plaintiff in 1947 for the construction of a private fish pond on its land for use only by the members of the Hunt Club and their guests. In the same year, more than $2,300 was spent by plaintiff for enlarging and improving a log cabin situated on Hunt Club leased lands and used exclusively by members of said club and guests at the hunts; for fencing, cleaning of fire lanes, etc., on plaintiff's lands or adjoining leased lands of the Hunt Club; for bunks and mattresses; for bathroom fixtures and water heater in the cabin, and for a boat and outboard motor to be used by Hunt Club members on the river bounding plaintiff's lands. Several members of the Hunt Club, who were stockholders in the plaintiff taxpayer, contributed their services in drafting plans and supervising the building of the fish pond. Some of the actual labor of enlarging the cabin was done by these members and they received no compensation for their services.

In the year 1948, plaintiff made another sale of timber and received $2,-514.60 which was deposited in its bank account. The reasons for this sale were the same as those which prompted the 1946 sale. It was testified that plaintiff anticipates that other such sales of timber may be made from time to time. No part of plaintiff's receipts from these sales have been paid over to the Hunt Club or any other organization. No

dividends have ever been paid by plaintiff at any time.

On November 21, 1947, at the annual meeting of stockholders of plaintiff, the following resolution, containing an amendment to the corporation's by-laws, was unanimously adopted:

"1. Resolved that the objects and purposes for which the corporation was formed as set out in paragraph III of the original articles of incorporation be amended so as to more clearly show that said corporation was formed for non-profitable purposes, being established exclusively for the amusement, entertainment, enjoyment and recreation of persons entitled to fish and hunt on the premises owned, leased and/or controlled by said corporation, which proposed amendment shall be added to, as explanatory of, said paragraph III, and shall be as follows:

" 'The objects and purposes for which this corporation is formed, as set out in paragraph III of the Articles of Incorporation issued on the 27th day of October, 1937, are intended to be and shall mean that this corporation shall be operated exclusively for pleasure, recreation, entertainment and enjoyment of persons entitled to fish and hunt on any premises owned, leased and/or controlled by said corporation, and for other non-profitable purposes, and that no dividends shall be paid or be payable to any stockholders herein.' "

It is obvious that this resolution was intended to bolster the claim of the plaintiff taxpayer that it is a non-profit corporation operating exclusively for pleasure, recreation and entertainment; but there is no evidence that the corporate charter was formally amended pursuant to the resolution.

No part of the money received, during or since 1946, from the sale of timber and from the sale of plaintiff's stock, or from dues and assessments paid by members of the Hunt Club, has been, or can be, used for any purpose other than the replacement or improvement of hunting and fishing facilities and related hunting and fishing activities. The yearly dues and assessments paid by Hunt Club members are used primarily for paying the drivers of the hunting dogs and other incidental hunting expenses.

Taxpayer on March 6, 1950, paid $895.18 in income tax for the year 1946 and $156.94 in deficiency interest pursuant to an assessment by the Commissioner of Internal Revenue, but reserving the right to claim or sue for a refund. The claim for refund subsequently filed by taxpayer contended, in substance, that taxpayer was exempt from income tax as a club organized and operated exclusively for pleasure, recreation and other non-profitable purposes, and also exempt as a corporation organized for the exclusive purpose of holding title to property, collecting income therefrom and turning over the entire amount thereof, less expenses, to an organization which was itself exempt from income tax. The plaintiff's claim for refund was denied by the Commissioner of Internal Revenue on February 2, 1951, and this action for refund was filed on July 22, 1952.

In United States v. Community Services, Inc., 4 Cir., 1951, 189 F.2d 421, 425, the Court said: "But we must recognize the fact that tax exemptions are matters of legislative grace, which must, accordingly, be strictly construed against the taxpayer". There the corporate taxpayer claimed that it was exempt from the payment of employment taxes on the theory that it was organized and operated exclusively for charitable purposes. However, the corporate charter, even though issued under the laws of South Carolina particularly applicable to charitable corporations, clearly disclosed the corporate purpose of carrying on business ventures in order to earn profits. The facts were that substantial profits had been received from business activities over a period of sev-

eral years and only a portion thereof had been used for charitable purposes. The Court decided that, to qualify for the exemption, the corporation must be organized and operated *exclusively* for charitable purposes.

While the Fourth Circuit case above cited does not decide the questions here presented, it is clear that tax exemption provisions must be strictly construed against the taxpayer. Certainly one statement of that Court, 189 F.2d at page 428 applies with equal force here. I refer to the following language: "It cannot be denied that in the cases cited by taxpayer and those cited by the Government, both the decisions reached on the facts and the views expressed in the opinions are so varied and so divergent, that they cannot readily be reconciled".

The plaintiff cited numerous cases, which have been examined by this Court, to sustain its position, included among which are the following: Campbell v. Big Spring Cowboy Reunion, 5 Cir., 210 F.2d 143, 42 A.L.R.2d 1015; Trinidad v. Sagrada Orden, 263 U.S. 578, 44 S.Ct. 204, 68 L.Ed. 458; Koon Kreek Klub v. Thomas, 5 Cir., 108 F.2d 616; Roche's Beach, Inc., v. C. I. R., 2 Cir., 96 F.2d 776; Debs Memorial Radio Fund v. C. I. R., 2 Cir., 148 F.2d 948; United States v. Community Services, Inc., supra; C. I. R. v. Battle Creek, Inc., 5 Cir., 126 F.2d 405.

The government, in its brief, cites several of the cases cited by the plaintiff, including the Campbell, Debs, Koon Kreek Klub, Roche's Beach and Community Services cases. However, the government urges that there are two lines of cases, one holding that the purpose for which taxpayer was organized should be determined from the purposes listed in the instrument creating it, citing Helvering v. Coleman-Gilbert, 296 U.S. 369, 374, 56 S.Ct. 285, 80 L.Ed. 278; Northwestern Municipal Ass'n v. United States, 8 Cir., 99 F.2d 460; Sun-Herald Corp. v. Duggan, 2 Cir., 73 F.2d 298, certiorari denied 294 U.S. 719, 55 S.Ct. 546, 79 L.Ed. 1251; the other line of cases indicating that resort may be had to extrinsic evidence to show the actual purpose of incorporation, citing the Debs, Roche's Beach and Campbell cases, supra.

In United States v. Community Services, Inc., supra, the taxpayer was incorporated under the charitable corporation laws of South Carolina and the Court there held, 189 F.2d at page 424, that there was no merit in taxpayer's claim to exemption merely because it was incorporated under such laws. Therefore, it would seem to be immaterial to a determination of the questions here presented that the plaintiff was not incorporated in West Virginia as a nonprofit organization and the Court is of the opinion that the corporate action and plaintiff's course of conduct over the years may be examined, in connection with the provisions of the charter itself, in determining the real corporation purposes. The Court has considered the corporate action through the years of plaintiff's corporate existence and has reached the conclusion that, excepting the sales of timber from the plaintiff's lands, the principal activities of taxpayer have been connected with hunting, fishing, entertainment, amusement and recreation for its stockholders and others. However, this conclusion does not answer the questions here presented unless the exemption provisions of the statute and regulations are fully met.

Bearing in mind that tax exemption provisions are to be strictly construed against the taxpayer, it is obvious that at least an adverse implication arises when, as here, the corporation is organized just as any other corporation organized for pecuniary profit, with broad powers to buy and sell land, grow timber, construct buildings to be used by hunting and fishing parties on such terms as it sees fit, and sundry other powers. The purposes listed in the certificate of incorporation were the purposes as stated by the incorporators to their attorney. Even though no part of the funds of the corporation has appar-

ently been used for any purpose other than recreation, entertainment, etc., of Hunt Club members, there is nothing in the charter to restrict the use of such funds to those purposes and it is difficult for this Court to reconcile certain facts with the contentions of the plaintiff. The lodge of the Hunt Club was not on plaintiff's lands, and the Hunt Club appears to have encountered no difficulty in obtaining permission to hunt over the lands of adjoining property owners in return for the payment of property taxes. The question naturally arises as to why the particular acreage was purchased by the plaintiff corporation in 1937 for $12,500 unless such purchase represented an investment. It is again noted that a total of $6,797.36 was received from two timber sales in 1946 and 1948 and that further sales are anticipated.

■■ It is conceded that a very close relationship existed between the members of the Hunt Club and taxpayer, but this Court is not unmindful of the fact that a corporation and its stockholders are deemed separate entities in tax matters. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348. If the theory of taxpayer as here urged were to be accepted and applied, it would be quite consistent to conclude that a corporation becomes a religious organization by virtue of stock ownership by individual members of a congregation, or becomes an educational organization by virtue of stock ownership by individual members of a university faculty. Such conclusions would appear to be illogical and unsupported by reason. Therefore, the Court is of the opinion that taxpayer did not become a "club" simply because all of its capital stock was acquired by individual members of the Hunt Club.

■ As employed in Section 101(9), the word "club" means "social club", Keystone Automobile Club v. Commissioner, 3 Cir., 181 F.2d 402–406, and the social clubs exempt from tax contemplated in the Regulations are those supported by membership fees, dues and assessments. Treasury Regulations 111, Section 29.101(9)–1, supra.[1]

■ Here the taxpayer did not have any "members" and, therefore, could not be supported by membership fees, dues and assessments. The available funds of taxpayer consisted of amounts received for its capital stock and amounts realized from the sale of timber. If taxpayer could establish that it was a club organized and operating exclusively for pleasure, recreation or other similar nonprofitable purposes, the further question presented would be whether the sales of timber in 1946 and 1948 were incidental to the club purposes and not destructive of an otherwise exempt status, as in Koon Kreek Klub v. Thomas, supra, and in Santee Club v. White, 1 Cir., 87 F.2d 5, or was recurrent and not incidental to the club purposes, as in West Side Tennis Club v. Commissioner, 2 Cir., 111 F.2d 6, 130 A.L.R. 103, certiorari denied 311 U.S. 674, 61 S.Ct. 40, 85 L.Ed. 434; and Jockey Club v. Commissioner, 2 Cir., 76 F.2d 597. A witness for taxpayer testified that the timber cut and sold in 1946 and 1948 consisted of older trees, the removal of which eliminated hazards to hunters and improved the chances of survival of younger trees. This same witness testified that the 1946 sale took place at a time when the price of lumber was higher than it had been, and that it was hoped that more sales of timber would be made in the future.

But it would appear that it is unnecessary to a decision in this case to deter-

1. Some question arises as to whether or not the cited regulation rigidly defines and limits the type of social club exempt from tax or is merely descriptive of the type of social club usually coming within the purview of Section 101(9). Rev.Rul. 44, 1953–1, Cum.Bull. 109, re- lating to a social club which derived its principal income from the operation of a bar and grill patronized by members and their guests, indicates that the regulation was merely descriptive, and did not, standing alone, exclude all other clubs from the scope of Section 101(9).

mine whether the sales were incidental to club purposes for the reason that taxpayer is not and never has been a club. For the same reason, it is unnecessary to consider whether any part of taxpayer's net earnings "inures to the benefit of any private stockholder". Although taxpayer has never paid any dividends and cannot do so under the existing provisions of its by-laws, the proscribed inurement might occur otherwise than through the payment and receipt of dividends. Northwestern Municipal Ass'n v. United States, supra. The by-laws of taxpayer provide, in effect, that if shares of stock were presented for transfer to anyone not approved by the Board of Directors, taxpayer would have the option to purchase the shares at book value. The book value would reflect any earnings retained by taxpayer and, to that extent, constitute inurement to the benefit of the selling shareholder.

Although taxpayer is closely connected in its setup and activities with the Hunt Club, and although the capital stock of taxpayer is owned by individual members of the Hunt Club, it is not itself a club. When taxpayer's claims for recognition of exempt status were denied by the Commissioner of Internal Revenue in 1942, taxpayer presumably could have transferred its acreage to the Hunt Club or could have taken such steps as were necessary to change its status. Taxpayer did not elect to do so and now is reduced in this case to the untenable argument that, in an area of the law where a corporation and its stockholders are recognized as separate entities, and where any doubts in respect to its claim for exemption must be resolved against it, the attributes of the Hunt Club be considered as those of the taxpayer.

■■■■ Disposition of the plaintiff's claim to the exemption from income tax allowed in Section 101(14) is more easily made. This section applies in terms only to those corporations which are organized for the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to a corporation which in itself is exempt from income tax. Although taxpayer, in its certificate of incorporation, listed as one of its corporate purposes the holding of title to property, the certificate was silent with respect to the collection of income from that property and the payment of such income to an exempt organization. The turning over of income to an exempt organization was not the exclusive purpose for which it was organized and, moreover, was not even one of the purposes for which it was organized. Adopting the view that real and actual corporate purposes may be determined by the stated purposes in the certificate of incorporation and from extrinsic evidence as to corporate activities, the record in this case contains no evidence reflecting a corporate purpose to collect income to be turned over to an exempt organization. Not only must a corporation claiming exemption under Section 101(14) qualify in respect to organizational purpose, but it must also operate in such manner that any income received by it is turned over forthwith to an exempt organization. Gagne v. Hanover Waterworks Co., 1 Cir., 92 F. 2d 659.

■■■ Apart from the lease of plaintiff's land for agricultural purposes, which evidently did not produce any revenue which could be turned over to anyone, it appears that taxpayer's only other income, up to and including 1946, was from the sale of timber, and that the proceeds of that sale were not turned over to anyone but were deposited in the taxpayer's bank account. Omitting from consideration the fact that a tax exempt status for the Hunt Club has never been established, it is abundantly clear that taxpayer has not turned over its income to that organization. Under these circumstances, it is clear that taxpayer does not qualify as a corporation exempt from income tax under Section 101(14).

The plaintiff's claim for refund in this action must be denied, with costs as-

sessed against the plaintiff. The foregoing shall be considered as containing the Court's findings of fact and conclusions of law. An order in conformity with this opinion shall be entered.