OPINION. Raum, Judge: We have found as a faet that petitioner was not operated during the taxable years exclusively for charitable purposes, and we are fully satisfied that a substantial purpose of petitioner’s acquisition and operation of the Clover enterprise was to benefit businesses controlled by Lesavoy and members of his family. The evidence was at times conflicting, and some of the strong evidence against petitioner came from Cary Boshamer, who had become hostile to petitioner and the Lesavoy interests. Nevertheless, we had ample opportunity to hear and observe the witnesses on the stand, and we are convinced that Boshamer’s testimony was truthful. The chief purpose in acquiring Clover was to assure a continuing supply of cotton yam to businesses controlled by Lesavoy .and his family. This purpose was not disproved by showing that the sales of yam to such businesses were made at the same prices charged other customers. In times of short supply, with maximum prices controlled by law, the greatest advantage may well lie not in favorable price discrimination, but in being sure of an adequate supply at a legitimate price. We have no doubt on all the evidence before us, including the figures showing the sharply increased sales of cotton yam to Blossom and Lisle Mills immediately after March 18, 1946,[2] that the dominant purpose in petitioner’s acquisition of Clover was to benefit businesses controlled by the Lesavoy family. Moreover, the evidence showed that, on occasion, Blossom was able to and did shift to petitioner the burden of a decrease in the market price of raw cotton and cotton yarn which Blossom would otherwise have borne. It may be quite true that petitioner’s accumulated earnings will ultimately find their way into charitable organizations. That fact, however, satisfies only one of the conditions prerequisite to exemption under section 101 (6). Furthermore, we are satisfied, on this record, that such was at best only a secondary objective in the operation of petitioner during the tax years before us, and that thé dominant purpose was to benefit business enterprises controlled by Lesavoy and his family. The existence of the latter purpose is inconsistent with exemption under section 101 (6). In view of our conclusion as to the purpose for which petitioner was operated it becomes unnecessary to consider the question, on which there are conflicting decisions, as to whether the exemption is available where the earnings of a commercial enterprise are dedicated to charitable uses. Compare C. F. Mueller Co., 14 T. C. 922, reversed 190 F. 2d 120 (C. A. 3); Willingham v. Home Oil Mill, 181 F. 2d 9 (C. A. 5); and Roche’s Beach v. Commissioner, 96 F. 2d 776 (C. A. 2); with John Danz, 18 T. C. 454, affirmed 231 F. 2d 673 (C. A. 9); Donor Realty Corporation, 17 T. C. 899; Joseph B. Eastman Corporation, 16 T. C. 1502; United States v. Community Services, Inc., 189 F. 2d 421 (C. A. 4), certiorari denied 342 U. S. 932; Ralph H. Eaton Foundation v. Commissioner, 219 F. 2d 527 (C. A. 9); and Bear Gulch Water Co. v. Commissioner, 116 F. 2d 975 (C. A. 9), certiorari denied 314 U. S. 652. The instant case goes far beyond that problem. Here we have a commercial business that was acquired by a presumably otherwise tax-exempt foundation for the purpose of benefiting private business enterprises owned or controlled by the Lesavoy family. That purpose was the dominant factor in the petitioner’s operation of the Clover mill, and it is incompatible with exempt status under section 101 (6). In C. F. Mueller Co. v. Commissioner, the Court of Appeals was careful to state (190 F. 2d at p. 122): It is clear that we are not here dealing with a corporation the purpose of which is to benefit, directly or indirectly, private interest. See Better Business Bureau of Washington, D. C., Inc. v. United States, 1945, 326 U. S. 279, 66 S. Ct. 112, 90 L. Ed. 67; Universal Oil Products Co. v. Campbell, supra [181 F. 2d 451 (C. A. 7), certiorari denied, 340 U. S. 850]. * * * That element, which was thus absent in the Mueller case,[3] is present here, and we deem it of crucial significance, wholly apart from our views as to the basis for the decision in the Mueller case itself. And in the light of our conclusion, it also becomes unnecessary to determine whether any part of petitioner’s earnings inured to the benefit of any private shareholder or individual. Petitioner has raised an issue in its pleadings as to whether it should be taxed as a corporation or as a trust. Its evidence does not overcome the Commissioner’s determination in this respect, which treated petitioner as a trust. Cf. John Danz, 18 T. C. 454, affirmed 231 F. 2d 673 (C. A. 9). Petitioner has challenged the Commissioner’s disallowance of certain amounts claimed as contributions in 1947 and 1948. In view of our findings with respect to those alleged contributions we hold that the Commissioner did not err in this regard. The final issue relates to the additions for delinquency and negligence determined by respondent. Secs. 291 (a) and 293 (a), I. E. C. 1939. Petitioner could not reasonably rely during the taxable years before us upon the ruling of the respondent made in 1945 under a set of facts so materially different from that existing in all later taxable years. Forms 990 filed by the petitioner clearly did not constitute such notice as was contemplated by the ruling, nor could petitioner reasonably assume that it did. Petitioner could not in good faith expect that such notice as was contained therein would promptly and adequately apprise respondent of the situation existing after the acquisition of the assets of Clover, and enable him promptly and intelligently to reappraise petitioner’s right to exemption under section 101 (6). And finally, petitioner may not blithely assume that it must necessarily remain exempt despite any such changes. Its failure to make and file returns required by law for the years in question was due to willful neglect and not to reasonable cause. A part of the deficiencies for those years, particularly in the light of its neglect adequately to keep respondent informed was due to negligence, but without intent to defraud. The additions to the tax were properly determined. Decision will he entered for the respondent. The evidence shows a decrease in sales of Clover yarn to Blossom in 1947 and 1948. That decrease was apparently attributable not only to the poor quality of some of the yarn, but also to the fact that Cary Boshamer, who managed Clover and- had a substantial interest in having petitioner discharge its liability on the notes to him, reduced the shipments of yarn when Blossom failed to make payments as promptly as had been contemplated. Moreover, shipments increased substantially in 1949, when Blossom was succeeded by Penn State Mills, which was thought by Boshamer to be in a better financial position than its predecessor. In the Better Business Bureau case, cited above by the Court of Appeals In the Mueller opinion, the Supreme Court said (326 U. S. at p. 283): In this Instance, In order to fall within the claimed exemption, an organization must be devoted to educational purposes exclusively. This plainly means that the presence of a single noneducatlonal purpose, If substantial in nature, will destroy the exemption regardless of the number or importance of truly educational purposes. The Better Business Bureau case involved a claim for exemption under section 811 (b) (8) of the Social Security Act which the Court there held to be governed by the same factors as the exemption from income tax under section 101 (6) (1939 Code).