MARIE AND ALEX MANOOGIAN FUND, A MICHIGAN CORPORATION, DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF METAL PARTS MANUFACTURING COMPANY, PETITIONER, *v.* UNITED STATES OF AMERICA, RESPONDENT.

Docket Nos. 816–R, 817–R.   Filed June 17, 1955.

*George L. Cassidy, Esq., William C. Loud, Esq.,* and *A. Claiborne Leigh, Esq.,* for the petitioner.
*Frederick N. Curley, Esq.,* for the respondent.

### OPINION.

LEMIRE, *Judge:* After various preliminary maneuvers these consolidated proceedings are here for a determination on the merits. They involve the redetermination of excessive profits of the petitioner for its fiscal period June 1, 1944, through December 31, 1944, and for the fiscal year ended December 31, 1945.

The primary question presented relates to the jurisdiction of this Court under the Renegotiation Act of 1943 to determine the status of the petitioner within the purview of section 101 (6) of the Internal Revenue Code of 1939.   If the answer is in the affirmative, the petitioner's status as an exempt organization during the periods involved is to be determined.

The stipulated facts are incorporated herein by reference.

The petitioner was incorporated under the laws of the State of Michigan in December 1942 as a nonprofit corporation.

The purposes of the corporation, as set forth in article II of its charter, are as follows:

To use the capital and income of the corporation for such benevolent, charitable, educational, scientific, religious and public purposes as in the judgment of the trustees will promote the health, welfare, happiness, education, training and development of men, women and children, particularly the sick, young, erring, poor, crippled, helpless, handicapped, unfortunate and underprivileged, regardless of race, color, religion or station, primarily in the United States and elsewhere in the world.   To give the capital and income of same to other charitable or other nonprofit organizations organized for same or similar purposes in the United States or elsewhere in the world.

On May 1, 1944, the petitioner filed a certificate of amendment to the articles of incorporation.   The amendment added to article II the following paragraph:

To own and hold title to real estate, securities, and other properties and chattels, including businesses and enterprises; the income of which and/or profit

from the conduct of which, shall be used for the purposes hereinbefore enumerated.

The petitioner, sometimes hereinafter referred to as the Fund, was to be financed by "gift, donation, bequest and devise."

Under date of June 1, 1944, a deed of trust was entered into between Marie Tatian (Manoogian), Dickran Boyajian, and the Fund. By the terms of this instrument Boyajian agreed to accept, as trustee, certain chattels, including cash, and the use of the trade name, "Metal Parts Manufacturing Company." Among other things, Boyajian was permitted to either liquidate or continue the operation of Metal Parts Manufacturing Company. By the trust deed the Fund became the beneficial owner of the machinery and plant equipment, etc., used by the Company. On June 16, 1944, Dickran Boyajian, as trustee for the Fund, filed a certificate for the conducting of business under the assumed name of Metal Parts Manufacturing Company, hereinafter referred to as the Company. Dickran Boyajian operated the Company from June 1, 1944, to October 31, 1945. The operation involved the manufacture and processing of various types and/or parts of antiaircraft shells.

During its fiscal period ended December 31, 1944, the Company had renegotiable sales of $2,156,480.76, from which it realized a profit of $283,827.27. During the fiscal period ended December 31, 1945, the Company had renegotiable sales of $916,761.86, from which it realized a profit of $90,887.16.

On August 6, 1948, the War Contracts Price Adjustment Board advised petitioner by letters and orders that during its fiscal period ended December 31, 1944, it had excessive profits in the principal amount of $175,000, and that during its fiscal year ended December 31, 1945, it had realized excessive profits in the principal amount of $50,000. On October 27, 1948, petitions were filed with this Court putting in issue the determinations of the Board that the petitioner had excessive profits for its fiscal periods in question.

On June 19, 1944, the Commissioner of Internal Revenue addressed a letter to the Fund, advising that the admendment to its articles of incorporation would not affect the Bureau's ruling, dated August 26, 1943, that the Fund was exempt from Federal income tax under section 101 (6).

On June 15, 1948, the Commissioner again sent a letter to the Fund. After referring to its ruling of August 26, 1943, the letter set forth various facts. The opinion was expressed that on the basis of the evidence on file and the facts outlined, it had not been established that in 1943, and subsequent years, the Fund was organized and operated exclusively for the purposes specified in section 101 (6), and further stated that the ruling of August 26, 1943, was modified to hold that the Fund was not entitled to exemption from Federal income tax.

The ruling of June 15, 1948, was in effect at the time the War Contracts Price Adjustment Board made its determinations of petitioner's excessive profits for the fiscal periods involved and at the time the petitions were filed with this Court.

On December 6, 1948, the Commissioner wrote to the Fund stating that the ruling of June 15, 1948, was revoked and the ruling of August 26, 1943, reinstated. The letter did not set forth any facts upon which the opinion expressed was predicated.

During its fiscal period June 1, 1944, to December 31, 1944, petitioner realized excessive profits in the amount of $175,000.

During its fiscal year ended December 31, 1945, the petitioner realized excessive profits in the amount of $50,000.

The petitioner has failed to establish that during the fiscal periods in question it was exempt from renegotiation within the purview of section 403 (i) (1) (D) of the Renegotiation Act of 1943.

Petitioner concedes that if it is subject to renegotiation during the fiscal periods involved it realized excessive profits in the respective amounts determined by the Board.

Petitioner contends that the last ruling of the Commissioner under date of December 6, 1948, that it was exempt under section 101 (6) of the Code is controlling, and, therefore, this Court lacks jurisdiction to determine whether or not it is an exempt organization within the purview of section 403 (i) (1) (D) and (i) (2) of the Renegotiation Act of 1943.[1] Solely because of the omission in subsection (i) (2) of paragraph (D) the petitioner concludes that Congress intended to confer exclusive authority upon the Commissioner of Internal Revenue to interpret and apply the provisions of paragraph (D) of section 403 (i) (1).

In our opinion, the conclusion which the petitioner advances is without logic and an improper interpretation of the Congressional intent as shown by the legislative history of the Renegotiation Act.

Section 101 (6) has been in existence for many years. Congress was well aware that the statute and the Treasury Regulations applicable thereto have been construed and applied by the Federal courts, including the Supreme Court. Under such circumstances, we think that Congress deemed it unnecessary to authorize the Renegotiation Board to make new regulations interpreting and applying the exemption provided in paragraph (D). The omission of paragraph (D) in

---

[1] Section 403 (i) (1) (D) and (i) (2), pertinent here, read as follows:

Sec. 403 (i). (1) The provisions of this section shall not apply to—

\* \* \* \* \* \* \*

(D) any contract or subcontract with an organization exempt from taxation under section 101 (6) of the Internal Revenue Code; or

\* \* \* \* \* \* \*

(2) The Board is authorized by regulation to interpret and apply the exemptions provided for in paragraph (1) (A), (B), (C), (E), and (F) and interpret and apply the definition contained in subsection (a) (7).

subsection (2) appears to us to have no significance as an aid to a construction of the Renegotiation Act. No provision of the Act specifically confers any authority upon the Commissioner of Internal Revenue. Assuming, without deciding, that Congress intended that the Board was to be guided by the ruling of the Commissioner as to the exempt status of an organization under paragraph (D) of the Renegotiation Act, this record shows that at the time the Board made its determinations here in question, he had ruled that the petitioner was not an organization exempt from tax. We think it likely that the petitioner would assert this Court's jurisdiction to review if the last ruling of the Commissioner was not in its favor.

The petitioner argues further that this Court has no greater power or authority than the Board to determine the exempt status of an organization under the Renegotiation Act. We are not impressed with the soundness of the argument. Section 403 (e) (1) of the Act provides in part that—

A proceeding before the Tax Court to finally determine the amount, if any, of excessive profits shall not be treated as a proceeding to review the determination of the Board, but shall be treated as a proceeding de novo. * * *

The question of the power of this Court under the Renegotiation Act has been passed upon by the Supreme Court, thus obviating the need for any extended discussion here. In *Macauley* v. *Waterman S. S. Corp.*, 327 U. S. 540, 544, the Court said:

The legislative history of the Renegotiation Act, moreover, shows that Congress intended the Tax Court to have exclusive jurisdiction to decide questions of fact and law, which latter include the issue raised here of whether the contracts in question are subject to the Act. * * *

In *Aircraft & Diesel Corp.* v. *Hirsch*, 331 U. S. 752, the Court reaffirmed its decision in the *Macauley* case, *supra*.

Section 101 (6) of the Internal Revenue Code is an exemption statute. One claiming the benefit of an exemption has the burden of showing that he comes within the statute. *Heiner* v. *Colonial Trust Co.*, 275 U. S. 232; *Bank of Commerce* v. *Tennessee*, 161 U. S. 134. The question whether an organization is exempt from tax presents a question of ultimate fact, or at least a mixed question of fact and law. *Underwriters' Laboratories, Inc.*, 46 B. T. A. 464, affd. 135 F. 2d 371, certiorari denied 320 U. S. 756.

An organization to be entitled to exemption from tax under section 101 (6) must establish that it is both organized and operated exclusively for one of the purposes specified in the statute. While the charter of a corporation is indicative as to the purposes for which it was organized, it does not control the facts as to whether it was operated exclusively for such purposes. Whether it is so operated is to be determined from the facts and circumstances established in

each particular case. *Cummins-Collins Foundation*, 15 T. C. 613, 622; *Underwriters' Laboratories, Inc., supra.*

This Court, in denying the petitioner's motion for a summary judgment in these proceedings, held that it had jurisdiction to determine whether or not petitioner was exempt from renegotiation.[2] Nevertheless, the petitioner has offered no evidence covering its operations during the fiscal periods involved. Petitioner is a nonprofit corporation organized for the purpose of devoting its income and capital to the use of organizations specified in section 101 (6). There is no evidence here showing that its income was used exclusively for such purposes. The petitioner's original and amended articles of incorporation, the trust deed, the certificate filed under the assumed name act of the State of Michigan, and the various and conflicting rulings of the Commissioner of Internal Revenue as to its exempt status, constitute the entire record before us. It is, therefore, impossible for us to determine with the certainty required for the operation of section 101 (6) that the petitioner was both organized and operated exclusively for the purposes specified in the statute and, therefore, not subject to renegotiation. Petitioner has bottomed his case solely on the ground of jurisdiction. In this posture of the proceedings this Court, having jurisdiction, holds that the petitioner has failed to establish that it is an organization exempt under section 101 (6), and holds further that its excessive profits during the respective fiscal periods in question were in the amounts set forth herein.

Reviewed by the Court.

*Orders will issue in accordance herewith.*

RAUM, *J.*, concurs in the result.

---

[2] See Memorandum and Order dated July 17, 1950.