OPINION. Harron, Judge: Whether or not petitioner is a corporation the income of which is taxable for each of the years 1945-1953, inclusive, depends on (1) whether petitioner qualified for exemption from tax during that 9-year period under the provisions of section 101 (6), 1939 Code,[1] and (2) whether respondent abused his discretion under section 3791 (b)[2] in retroactively holding petitioner taxable for the 9-year period upon his revocation on January 22,1953, of his ruling of July 21,1941, under which he held that petitioner was entitled to exemption from tax under section 101 (6). In order to qualify for exemption from tax during the years involved, petitioner has the burden of proving that it was (a) both organized and operated exclusively for charitable purposes (or for any of the other purposes) specified in section 101 (6), and (b) that no part of its net earnings for each of the taxable years inured to the benefit of any private individual. Petitioner claims to have been organized exclusively for charitable purposes and it denies that any of its net earnings served to benefit any individual. Petitioner contends, further, that the dissolution of petitioner will not result in gain to any individual. It argues that the provisions of section 101 (6) should be construed broadly and liberally in its favor. It is well established that “[a] statute creating an exemption must be strictly construed and any doubt must be resolved in favor of the taxing power.” Associated Industries of Cleveland, 7 T. C. 1449, 1464; American Automobile Association, 19 T. C. 1146, 1160. Petitioner errs in its argument to the contrary. In applying the provisions of section 101 (6), one question which must be considered is what is meant by charitable purposes. The statute does not define “charitable purposes.” The Commissioner, in Regulations 111, section 29.101 (6), states that corporations organized and operated exclusively for charitable purposes are organizations for the relief of the poor and indigent. This agrees with the meaning in law of charity which is, generally, a trust for the relief of poverty and for other purposes beneficial to the community. Special Commissioners v. Pemsel, [1891] A. C. 531, 3 Great Britain Tax Cases 53, 96.[3] Congress has used the term “charitable purposes” in its generally accepted legal meaning, and, also, there is in section 101 (6) a requirement that no part of the net earnings of a corporation claiming tax exemption may inure to the benefit of any private shareholder or individual. In considering the first question, the evidence has been examined thoroughly to ascertain whether petitioner was both organized and operated exclusively for charitable purposes and whether the above-stated requirement was met. Petitioner has failed to prove that it was organized and operated exclusively for any of the other purposes specified in section 101 (6). The evidence before us makes it clear that petitioner was not operated exclusively for either scientific or educational purposes. The argument that petitioner contributed to the “education of young doctors” associated with it does not help petitioner in its effort to qualify for exemption from tax. Young doctors who are associated with more experienced doctors in the private practice of medicine enlarge their knowledge from such association, of course, as do young lawyers employed by private law firms. Putting aside as lacking merit petitioner’s claims that it was operated for some of the other purposes enumerated in section 101 (6), the question is limited to whether petitioner was a charitable corporation. With respect to the organization of petitioner, it is noted that the fact that petitioner received its charter as a corporation not for profit, and that no stock was issued, is not controlling, and does not foreclose consideration of other factors because petitioner must establish, inter alia, that it was operated exclusively for charitable purposes. Cummins-Collins Foundation, 15 T. C. 613; Marie and Alex Manoogian Fund, 24 T. C. 412; Journal of Accountancy, Inc., 16 B. T. A. 1260, 1263; Better Business Bureau V. United States, 326 U. S. 279, 285; United States v. Community Services, 189 F. 2d 421, certiorari denied 342 U. S. 932. Petitioner’s articles of incorporation permitted it to solicit and receive donations and bequests and to give away medicines and medical supplies, but the articles did not restrict petitioner to carry on its operations for charitable purposes, and the evidence shows that petitioner was not operated in such a way as to carry out some of the purposes permitted by its articles. Petitioner did not solicit or receive legacies and bequests and it received from outsiders gifts that were so small as to be scarcely noticeable. We go on, therefore, to consideration of the other requirements of section 101 (6). The crux of the question whether petitioner was a tax-exempt corporation under section 101 (6) is whether petitioner was operated exclusively for charitable purposes, and whether any part of its net earnings inured to the benefit of any private individual. Upon consideration of all of the evidence, our conclusion is that during the years 1945-1953, inclusive, part, at least, of petitioner’s net earnings inured to the benefit of private individuals, and petitioner was not operated exclusively for charitable purposes. Briefly this conclusion is reached because of the following: The petitioner’s receipts were derived from the services of a group of physicians and dentists who were, for all practical purposes, associated together in the practice of medicine and dentistry through the contracts which were executed with petitioner under which the physicians and dentists were free to charge such fees as they individually determined. The associated doctors and dentists contributed to all of the costs and expenses of their activities which were carried on on premises owned by petitioner by turning over all their fees to petitioner, which petitioner collected. Such occasional instances as there were (or may have been) of giving of medical services and treatment to people by the individual doctors “regardless of their ability to pay therefor” were no more than any doctor in private practice may do under the ethics of the medical profession. Furthermore, the petitioner failed to produce records of the number of patients who received medical treatment free of charge or for nominal charges during each of the taxable years, and petitioner’s chief witness admitted that patients in substantial numbers were charged fees. The evidence as a whole shows that it was the usual practice of the doctors associated with petitioner to charge fees and for petitioner to collect such fees, and it was the exceptional or infrequent instance where no fee or a nominal fee was charged. No attempt was made by petitioner to show that the associated dentists gave dental treatment and care free of charge, or for nominal charges. The financial arrangements under the agreements with the doctors, the point system which was adopted in 1945, provided an incentive to the doctors to charge fees and assist petitioner in the collection of them. Petitioner maintained a retirement fund for the benefit of the associated doctors and paid into that fund, out of earnings, a large per cent of the cost of the plan. Substantially all of petitioner’s net earnings during the years 1945-1953 were distributed to the associated doctors. The control of petitioner from the time of its organization through 1953 was in the hands of three individuals who were related by marriage, the so-called trustees. No person outside this family group, consisting of Dwight S. Spreng, Elizabeth Dial Spreng, and Bobert Dial, was ever made a trustee, so that, in effect, the trustees of petitioner were a self-perpetuating family group. Dwight S. Spreng was paid a salary for managerial services, in addition to his share of petitioner’s net earnings in each year. There was indebtedness of petitioner to Dwight S. Spreng and to Bobert Dial on which petitioner paid interest totaling $74,444.94 during the period 1945-1953. In the light of all of these facts and factors, petitioner was not operated exclusively for charitable purposes, and most of its net earnings inured to the benefit of private individuals. Upon the entire record, it must be concluded that during the years 1945-1953, inclusive, petitioner was operated for profit by a small family group; that operations for profit were petitioner’s predominant activity, and that such charitable services as were rendered by the associated physicians were occasional and of too minor volume to qualify petitioner for exemption from tax under section 101(6). Fort Scott Clinic & Hospital Corp. v. Brodrick, 99 F. Supp. 515; Medical Diagnostic Association, 42 B. T. A. 610; General Contractors’ Ass’n v. United States, 202 F. 2d 633; Better Business Bureau v. United States, supra. Consideration has been given to cases relied on by petitioner, including Commissioner v. Battle Creek, 126 F. 2d 405. That case, on its facts, is distinguishable, as are others which are cited under this issue. More specifically, the reasons for the above conclusions are as follows: Petitioner has failed to establish that it was operated exclusively for charitable purposes in any year from the time of its organization. Petitioner’s only witness was Dwight S. Spreng. His testimony about the number of patients who were charity cases in each of the years 1945 through 1953 was vague and represents only estimates and conjecture. He did not produce any records to show the total number of patients who received treatments each year, the number who were treated free of charge, and the amounts or the rates of the fees charged. He evaded the proof of such facts by referring to some unexplained standard of “normal charges,” and by stating, in general, that 70 to 80 per cent of the patients paid “part” of a normal charge, only 20 per cent paid the full amount of so-called “normal” charges, and that he estimated that from 2 to 5 per cent paid nothing. His testimony on this point amounts to an admission that not more than 5 per cent of the patients paid nothing, and that about 95 per cent paid for services and treatments. Petitioner was located in an area where the residents did not have large income. Perhaps the rate of fees charged by the doctors who were associated with petitioner was lower than doctors charge patients whose income is fairly substantial. But the requirements of section 101 (6) are that a corporation must be operated exclusively for charity in order to be exempt from income tax, and those requirements are not met by charging moderate, compared to high, fees, or by giving free services to only a small per cent of all persons receiving treatment. See Fort Scott Clinic & Hospital Corp. v. Brodrick, supra. The evidence as a whole shows that during the period 1945-1953, inclusive, petitioner operated a clinic where doctors are associated together in the practice of medicine for profit. Beginning in 1945, a system was adopted for sharing net receipts after expenses which provided the individual doctors with salaries based upon the ratio of each doctor’s charges to total charges, the ratio of each doctor’s visits with patients to total visits, and the ratio of the new patients treated by an individual doctor to all new patients. Since petitioner’s trustees did not establish any schedule fixing the charges which could be made, each doctor was free to fix the amount of his fees as he saw fit. Spreng, in his testimony, admitted that the individual doctors fixed the amounts of their fees. The so-called point system for fixing the salaries of the individual doctors constituted a competitive system with incentives for increasing the extent of the services rendered by the doctors and the income to be derived from such services. The adoption of the above-described system in 1945 for fixing the respective salaries of the individual doctors effectively ruled out a charity clinic and made petitioner’s operations the conduct of professional work for profit. It is recognized, of course, that where a corporation is operated exclusively for charitable purposes, employees may receive reasonable compensation for their services, if they do not contribute their services free of charge. But where, as here, the method for fixing compensation for services is predominantly one which compensates the individual on the basis of the ratio of his fees and activity to the whole, so that each is in competition with the other, the operation is one for profit and the exemption from tax which section 101 (6) contemplates cannot be allowed. Section 101 (6) prescribes that if a corporation is to be exempted from tax, no part of its net earnings can inure to the benefit of any private individual. Petitioner’s method of fixing the compensation of the individual doctors and its practice of distributing substantially all of its net receipts among its associated doctors disqualified petitioner in each of the years involved for the tax exemption allowed by section 101 (6). The petitioner has failed to show clearly how Spreng and Dial accumulated credits which, by 1945, amounted to $120,000 for which each received bonds of petitioner in that total amount, on which interest in the amount of $74,444.94 was paid during the period 1945-1953, inclusive. Petitioner has not shown that under this arrangement Spreng and Dial did not benefit as private individuals from petitioner’s earnings. The case of Klamath Medical Service Bureau, 29 T. C. 339, affords an appropriate comparison with petitioner’s method of distributing its net receipts among its associated doctors. In that case, although the petitioner did not claim to be an exempt corporation under section 101 (6), it contended that its profits were not distributed to its stockholders under the guise of salaries. We held that the method of compensating employees achieved distribution of profits in addition to compensation for services. It is significant in this case that petitioner’s system for arriving at the respective amounts of the annual compensation of each of its doctors was similar to the method which was used by the Klamath Medical Service Bureau in making distributions of its net receipts. Petitioner has not shown that no part of its earnings inured to the benefit of any private individual. On this point, it is noted, further, that Spreng and Dial could receive the maximum benefits under petitioner’s retirement pension plan, compared to the benefits available to the associated doctors who worked under individual contracts. As “trustees” and “members,” the association of Spreng and Dial with petitioner could not be, or was not likely to be, severed, whereas the duration of the employment of the associated doctors was controlled by Spreng, Dial, and Elizabeth Spreng, the trustees. It is concluded, upon the entire record, that petitioner did not qualify for exemption from tax under section 101 (6) in any of the years 1945-1953, inclusive. It is concluded, also, that petitioner has failed to establish that it was operated exclusively for charitable purposes from the time of its organization in 1935 through 1944. Petitioner’s application of June 20, 1941, together with Spreng’s affidavit and other supporting documents, under which it obtained the Commissioner’s ruling of July 21,1941, that it was exempt from Federal income tax, was misleading. Spreng’s statement that petitioner has received donations and gifts totaling $42,490.28 was a gross exaggeration, and petitioner’s failure to attach to its application an example of its written contracts with the doctors associated with petitioner constituted an omission which kept from the Commissioner information which was needed to fully apprise him of the nature of petitioner’s operations. Petitioner was required by the Commissioner’s ruling of July 21, 1941, to report immediately to him any changes in its method of operations. When petitioner changed its method of computing the amounts of its associated doctors’ compensation in 1945, it failed to report such change in its operations to the Commissioner. Furthermore, the Form 990 which petitioner filed for each year did not give the Commissioner information about the new method of distributing net earnings among the doctors, and, therefore, these forms did not provide the Commissioner with facts upon which he could reappraise from time to time petitioner’s right to exemption from tax under section 101 (6). When the Commissioner’s agents undertook an investigation of petitioner’s operations in 1949, they then ascertained facts which showed that under his ruling of July 21, 1941, the Commissioner had made a mistake of law. The Commissioner was not equitably estopped by his 1941 ruling from retroactively applying his 1953 ruling, which revoked the 1941 ruling. The petitioner does not dispute this point. It cannot do so in the light of Automobile Club of Michigan v. Commissioner, 353 U. S. 180. In the alternative, petitioner contends that “the retroactive assessment * * * is an abuse of discretion and should be revoked [by this Court].” Petitioner argues that the respondent has “abused” the discretion conferred upon him by section 3791 (b) in determining that petitioner is liable for taxes for the years 1945 through 1953. It is claimed that the respondent, in effect, has repudiated his ruling of July 21, 1941, retroactively, and that the large amount of the total deficiencies resulting therefrom causes petitioner irreparable hardships from which this Court should grant relief. Petitioner refers to Lesavoy Foundation v. Commissioner, 238 F. 2d 589, reversing 25 T. C. 924. Petitioner’s alternative contention appears to be chiefly a claim for equitable relief. But this Court does not have the powers of a court of equity, Emilie Furnish Funk, 29 T. C. 279, 297; it has only the powers which have been expressly conferred by the Congress. See also Peerless Woolen Mills, 13 B. T. A. 1119; Roslyn Fuel Co., 16 B. T. A. 285, 294; and National Refining Co. of Ohio, 1 B. T. A. 236. To the extent that petitioner makes claim here for equitable relief, we are without authority to consider the matter. Otherwise, whether or not this Court has jurisdiction to review the respondent’s exercise of his discretion under section 3791 (b), we do not here decide. Neither party, on brief, has considered such question; no authorities are cited which deal with the question. However, there is substantial authority that the Commissioner had the power under section 3791 (b) to issue the ruling dated January 22, 1953, requiring petitioner to file returns for prior years. In Automobile Club of Michigan v. Commissioner, 230 F. 2d 585, affd. 353 U. S. 180, the court made the following observation: This provision [section 3791 (b) ] clearly vests the Secretary or the Commissioner acting with approval of the Secretary, with the discretionary power to prescribe the extent, “if any,” to which the ruling of the Commissioner shall or shall not be retroactive. The Supreme Court in the same case, supra, recognized that the Commissioner has a statutory power to retroactively revoke a ruling. This Court, in James Couzens, 11 B. T. A. 1040, 1154 et seq., recognized that where there is no statute of limitations which prevents his doing so, the Commissioner has the right to correct an error or change his earlier conclusions and apply his revised ruling to earlier years. See also Southern Maryland Agricultural Fair Association, 40 B. T. A. 549. The record in this case shows that the Commissioner’s ruling of July 21,1941, holding that petitioner was an exempt corporation, was erroneous. The error appears to have been due to petitioner’s failure to give the Commissioner all of the facts as they then existed. Later, in 1945, petitioner adopted a different and new system for paying its associated doctors for their services. During the years 1945 through 1953, at least, petitioner was, as a matter of law, not a tax-exempt corporation. In 1953, the respondent discovered that his 1941 ruling was in error and involved a mistake of law. Assuming, arguendo, but not deciding the question, that we have jurisdiction to review the Commissioner’s exercise, or lack of exercise, of his statutory discretion under section 3791 (b), we are unable to hold, on the record here, that the respondent erred in determining that petitioner is liable for taxes for the years 1945 through 1953. Petitioner’s alternative contention is rejected. A Rule 50 computation is required because of various stipulations of the parties. Eeviewed by the Court. Decision will be entered under Bule 50. SEC. 101. EXEMPTIONS PROM TAX ON CORPORATIONS. (6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation. For loss of exemption, under certain circumstances, see sections 3813 and 3814; SEC. 3791. RULBS AND REGULATIONS. (b) Retroactivity of Regulations or Borings. — The Secretary, or the Commissioner •with the approval of the Secretary, may prescribe the extent, if any, to which any ruling, regulation, or Treasury Decision, relating to the Internal revenue laws, shall be applied without retroactive effect. See: H. T. Reiling, “What Is a Charitable Organization,” 44 A. B. A. J. 525 (1958).