T.C. Summary Opinion 2005-91

UNITED STATES TAX COURT

JAMES A. AND NANCY B. WIESE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16545-04S.                    Filed July 19, 2005.

James A. Wiese and Nancy B. Wiese, pro sese.

<u>Albert B. Kerkhove</u> and <u>J. Anthony Hoefer</u>, for respondent.

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time that the petition was filed.[1]  The decision to

———————

    [1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for 2002,
the taxable year in issue and all Rule references are to the Tax
Court Rules of Practice and Procedure.

be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 2002 in the amount of $5,328. The deficiency is attributable solely to the alternative minimum tax (AMT) prescribed by section 55.

The only issue for decision is whether petitioners are liable for the AMT as determined by respondent in the notice of deficiency. Regrettably for petitioners, we hold that they are.

## Background

Some of the facts have been stipulated, and they are so found.

At the time that the petition was filed, petitioners resided in Iowa City, Iowa.

Pursuant to extensions, petitioners timely filed a joint Form 1040, U.S. Individual Income tax Return, for 2002 using the cash method of accounting. On their return, petitioners claimed personal exemptions for themselves and for the disabled brother of petitioner James A. Wiese; together, the three exemptions served to decrease petitioners' taxable income by $9,000. In addition, petitioners itemized their deductions on Schedule A, Itemized Deductions. Included on Schedule A were deductions for the following expenses: (1) Medical and dental expenses (in excess of 7.5 percent of petitioners' adjusted gross income) in

the amount of $2,914; (2) State and local income taxes in the amount of $32,099; and (3) real estate taxes in the amount of $20,445.  On line 41 of Form 1040, petitioners reported taxable income in the amount of $9,631.  Using the 2002 Tax Table, petitioners reported tax of $963, which they listed on line 55 of their return.  See secs. 1(a)(1), 3(a), (c).

Petitioners neither completed nor attached to their 2002 return Form 6251, Alternative Minimum Tax-Individuals, nor did they report any liability for the AMT on their return.[2]

Respondent issued a notice of deficiency to petitioners for the taxable year 2002.  In the notice of deficiency, respondent did not disallow any of the deductions or exemptions claimed by petitioners on their Form 1040 for the purpose of the income tax imposed by section 3(a).  See secs. 1(a)(1), 3(c).  Rather, respondent determined that petitioners are liable for the AMT under section 55 in the amount of $5,328.

---

[2]  Typically, AMT would be reported on line 43 of Form 1040.

Respondent computed the AMT in the following manner:

| | |
|---|---:|
| Form 1040, line 39 | $18,631[1] |
| plus: adjustments and preferences | |
| (1) medical/dental expenses | 2,021[2] |
| (2) State/local income taxes | 32,099 |
| (3) real estate taxes | 20,445 |
| alternative minimum taxable income | 73,196 |
| less: exemption amount | -49,000 |
| taxable excess | 24,196 |
| applicable AMT rate | 26% |
| tentative minimum tax | 6,291 |
| less: regular tax[3] | - 963 |
| AMT | $ 5,328 |

_____

[1] Line 39 of Form 1040 represents adjusted gross income less itemized deductions as reported by petitioners on their return. Line 39 precedes the line on which personal exemptions are claimed; thus, the AMT computation effectively serves to disallow all personal exemptions.

[2] Medical expenses in excess of 7.5 percent, but less than 10 percent, of adjusted gross income as reported by petitioners on their return.

[3] As reported by petitioners on line 55 of their return.

Although respondent's computation of the AMT in the notice of deficiency refers to "adjustments and preferences", petitioners did not have any "items of tax preference" within the meaning of that term as defined by section 57.

Petitioners filed a petition challenging respondent's deficiency determination. Petitioners contend that the AMT should not apply to them under the circumstances of their case, and they ask for a waiver from such tax on equitable grounds. In this regard, petitioners point out that they had no items of tax preference in 2002. Petitioners also point out that they are neither wealthy nor the high-income taxpayers for whom the AMT

was intended, having faced a financially-disastrous business failure in the mid-1990s from which they are still struggling to recover. Petitioners further point out that the State and local income taxes and real estate taxes in issue represent accrued but unpaid taxes from the 1990s that petitioners were only finally able to pay in 2002 after making substantial "catch-up" payments. In petitioners' view, petitioners "had no ability to influence the timing of these payments", which "represent normally hard, tax-deductible items when paid in cash".

## Discussion[3]

Our analysis necessarily begins with section 55, the section of the Internal Revenue Code that imposes the AMT. Initially, we note that the AMT is imposed in addition to the "regular tax" and that the regular tax is, as relevant herein, the income tax computed on taxable income by reference to the Tax Table. See sec. 55(a), (c)(1); see also sec. 26(b). In petitioners' case, the regular tax is $963, which is the amount that petitioners reported on line 55 of their Form 1040.

Pursuant to section 55(a), the AMT is the difference between the "tentative minimum tax" and the regular tax. As relevant herein, the tentative minimum tax is 26 percent of the excess of

---

[3] We decide the issue in dispute without regard to the burden of proof. See sec. 7491(a); Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933).

a taxpayer's "alternative minimum taxable income" over an exemption amount of $49,000.  See sec. 55(b)(1)(A)(i)(I), (b)(2), (d)(1)(A)(i).

Section 55(b)(2) defines the term "alternative minimum taxable income".  As relevant herein, the term "alternative minimum taxable income" means the taxpayer's taxable income for the taxable year determined with the adjustments provided in section 56 and increased by the amount of items of tax preference described in section 57.  As previously stated, petitioners had no items of tax preference in 2002.  Accordingly, alternative minimum taxable income means petitioners' taxable income determined with the adjustments provided in section 56.

Petitioners' taxable income for 2002 was $9,631, which is the amount that petitioners reported on line 41 of their Form 1040.[4]

As relevant herein, the adjustments provided in section 56(b) are threefold.  First, section 56(b)(1)(A)(ii) provides that in computing alternative minimum taxable income, no deduction shall be allowed for any State and local income taxes or real estate taxes.  Second, section 56(b)(1)(B) provides that medical and dental expenses shall be deductible in computing alternative minimum taxable income only to the extent that such

_____

[4]  Taxable income is defined by sec. 63.  As relevant herein, taxable income means adjusted gross income less (1) Schedule A itemized deductions and (2) personal exemptions.

expenses exceed 10 percent of the taxpayer's adjusted gross income. Third, section 56(b)(1)(E) provides that no personal exemptions shall be allowed in computing alternative minimum taxable income.[5]

The effect of section 56(b)(1)(A)(ii), (b)(1)(B), and (b)(1)(E) is to increase petitioners' taxable income by: (1) $52,544, the amount claimed by petitioners on their Schedule A for State and local income taxes ($32,099) and real estate taxes ($20,445); (2) $2,021, the amount claimed by petitioners on their Schedule A for medical and dental expenses that exceeded 7.5 percent but not 10 percent of their adjusted gross income; and (3) $9,000, the amount claimed by petitioners on their Form 1040 for the value of three personal exemptions. The total of these three adjustments is $63,565.

After taking into account the foregoing three adjustments, petitioners' alternative minimum taxable income for 2002 equals $73,196; i.e., taxable income of $9,631 plus adjustments of $63,565. Alternative minimum taxable income exceeds the

---

[5] Respondent's computation in the notice of deficiency of alternative minimum taxable income shortcuts the statutory formula. Thus, respondent's computation begins with petitioners' adjusted gross income less Schedule A itemized deductions, i.e., $18,631, thereby ignoring personal exemptions. However, respondent compensates for this omission by not including personal exemptions within "adjustments and preferences". Respondent's computation therefore yields the same amount of alternative minimum taxable income as does the statutory formula; i.e., $73,196.

applicable exemption amount of $49,000 by $24,196. See sec. 55(d)(1)(A)(i). Petitioners' "tentative minimum tax" is therefore 26 percent of the taxable excess; i.e., 26 percent of $24,196, or $6,291. See sec. 55(b)(1)(A)(i)(I). Because the tentative minimum tax exceeds the regular tax of $963, petitioners are liable for the AMT in the amount of such excess, i.e., $6,291 less $963, or $5,328. See sec. 55(a).

Petitioners do not challenge the mechanics of the foregoing computation. Rather, as previously stated, petitioners contend that the AMT should not apply to them under the circumstances of their case, and they ask for a waiver from such tax on equitable grounds, including the fact that they had no items of tax preference.

The clearest expression of legislative intent is found in the actual language used by Congress in enacting legislation. As the Supreme Court stated: "There is * * * no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." United States v. Am. Trucking Associations, Inc., 310 U.S. 534, 543 (1940); see Rath v. Commissioner, 101 T.C. 196, 200 (1993) (controlling effect will generally be given to the plain language of a statute, unless to do so would produce absurd or futile results). Again, as the Supreme Court stated: "In the absence of a clearly expressed legislative intention to the contrary, the

language of the statute itself must ordinarily be regarded as conclusive." Burlington N. R.R. Co. v. Okla. Tax Commn., 481 U.S. 454, 461 (1987) (citations and internal quotation marks omitted). In other words, if the terms of a statute are unambiguous, then, in general, "'judicial inquiry is complete.'" Id. (quoting Rubin v. United States, 449 U.S. 424 (1981)).

"The statutory scheme governing the imposition and computation of the alternative minimum tax is clear and precise, and leaves, on these facts, no room for interpretation." Okin v. Commissioner, T.C. Memo. 1985-199, affd. per curiam 808 F.2d 1338 (9th Cir. 1987). Thus, there is no justification, in the instant case, to ignore the plain language of the statute, particularly where, as here, "we have a complex set of statutory provisions marked by a high degree of specificity." Huntsberry v. Commissioner, 83 T.C. 742, 748 (1984).

The AMT serves to impose a tax whenever the sum of specified percentages of the excess of alternative minimum taxable income over the applicable exemption amount exceeds the regular tax for the taxable year. See sec. 55(a), (b)(1)(A), (c), (d)(1)(A); cf. Huntsberry v. Commissioner, supra at 744. "Alternative minimum taxable income" essentially means the taxpayer's taxable income for the taxable year determined with the adjustments provided in section 56 and increased by the amount of items of tax preference described in section 57.

In Huntsberry v. Commissioner, supra, we held that tax preferences are a significant, but not necessarily an indispensable component of alternative minimum taxable income. Accordingly, the taxpayers in that case were held liable for the AMT computed in accordance with the specific provisions of section 55, notwithstanding the fact that the taxpayers did not have any items of tax preference for the taxable year in issue. See Klaassen v. Commissioner, T.C. Memo. 1998-241, affd. without published opinion 182 F.3d 932 (10th Cir. 1999). The same result applies in the present case.

If Congress had intended to tax only items of tax preference, it would have defined "alternative minimum taxable income" differently, for example, solely by reference to items of tax preference. Instead, Congress provided for a tax measured by a broader base, namely, alternative minimum taxable income, in which items of tax preference are included merely as potential components.

We are cognizant of the inequity that petitioners perceive in the application of the AMT under the circumstances of their case. However, regarding whether it is "fair" that they should be liable for the AMT, we are reminded of one of our recent cases, Speltz v. Commissioner, 124 T.C. 165 (2005). In that case, the taxpayers became liable for AMT in excess of $125,000 based on their exercise of incentive stock options. However, the

stock acquired upon the exercise of those options subsequently lost all of its value. The taxpayers argued that under those circumstances, application of the AMT was unfair. Although not unsympathetic to the taxpayers' plight, the Court responded, id. at 176, as follows:

> The unfortunate consequences of the AMT in various circumstances have been litigated since shortly after the adoption of the AMT. In many different contexts, literal application of the AMT has led to a perceived hardship, but challenges based on equity have been uniformly rejected. See, e.g., Alexander v. Commissioner, 72 F.3d 938 (1st Cir. 1995), affg. T.C. Memo. 1995-51; Okin v. Commissioner, 808 F.2d 1338 (9th Cir. 1987), affg. T.C. Memo. 1985-199; Warfield v. Commissioner, 84 T.C. 179 (1985); Huntsberry v. Commissioner, 83 T.C. 742, 747-753 (1984); Prosman v. Commissioner, T.C. Memo. 1999-87; Klaassen v. Commissioner, T.C. Memo. 1998-241, affd. without published opinion 182 F.3d 932 (10th Cir. 1999).

> In Kenseth v. Commissioner, 259 F.3d 881, 885 (7th Cir. 2001), affg. 114 T.C. 399 (2000), the Court of Appeals for the Seventh Circuit commented:

> > it is not a feasible judicial undertaking to achieve global equity in taxation * * * . And if it were a feasible judicial undertaking, it still would not be a proper one, equity in taxation being a political rather than a jural concept. * * *

> > > *   *   *   *   *   *   *

> We believe that here, too, the solution must be with Congress.

> > > *   *   *   *   *   *   *

> Petitioners' materials * * * show that Congress is well aware of the claimed inequities resulting from the application of the AMT and has, so far, declined to act.

See also sec. 7442; <u>Paxman v. Commissioner</u>, 50 T.C. 567, 576-577 (1968) (the Tax Court is not a court of equity; "The power to legislate is exclusively the power of Congress and not of this Court or any other court."), affd. 414 F.2d 265 (10th Cir. 1969); <u>Lorain Ave. Clinic v. Commissioner</u>, 31 T.C. 141, 164 (1958) ("this Court does not have the powers of a court of equity * * *; it has only the powers which have been expressly conferred by the Congress.").

Absent some constitutional defect, we are constrained to apply the law as written, see <u>Estate of Cowser v. Commissioner</u>, 736 F.2d 1168, 1171-1174 (7th Cir. 1984), affg. 80 T.C. 783 (1983), and we may not rewrite the law because we may "deem its effects susceptible of improvement", see <u>Commissioner v. Lundy</u>, 516 U.S. 235, 252 (1996) (quoting <u>Badaracco v. Commissioner</u>, 464 U.S. 386, 398 (1984)). Accordingly, petitioners' appeal for relief must, in this instance, be addressed to their elected representatives. "The proper place for a consideration of petitioner's complaint is the halls of Congress, not here." <u>Hays Corp. v. Commissioner</u>, 40 T.C. 436, 443 (1963), affd. 331 F.2d 422 (7th Cir. 1964).

<u>Conclusion</u>

Petitioners impress us as conscientious taxpayers who take their tax responsibilities seriously and follow the rules. Unfortunately for them, we are constrained by the law, as

discussed above, to hold that they are liable for the AMT as determined by respondent in the notice of deficiency.[6]

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect our disposition of the disputed issue,

<u>Decision will be entered</u>

<u>for respondent.</u>

---

[6] Petitioners should regard as their good fortune the fact that respondent did not determine AMT for 2001 if, as suggested by petitioners, they claimed significant State and local income taxes and real estate taxes on their return for that year. In this regard, suffice it to say that the Commissioner's acceptance of a taxpayer's return for a prior year does not estop or otherwise preclude the Commissioner from raising the issue in a return for a subsequent year. E.g., <u>Ekren v. Commissioner</u>, T.C. Memo. 1986-509 (and cases cited at n.6).